**Myrna O'Dell FIRESTONE,
et al., Appellants,**

v.

**Leonard K. FIRESTONE, Appellee.**

No. 94–7202.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 2, 1995.

Decided Feb. 16, 1996.

Myrna O'Dell Firestone and Russell A. Firestone III, pro se, filed appellants' brief. Joan E. O'Dell, Washington, DC, argued the cause and filed the reply brief, for appellants.

Thomas F. Cullen Jr., Washington, DC argued the cause for appellee, with whom James E. Anklam, Washington, DC, was on the brief.

Before: BUCKLEY, GINSBURG, and TATEL, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Appellants, Myrna O'Dell Firestone, individually and as trustee of the Russell A. Firestone III Child Support Trust, and Russell A. Firestone III seek review of two district court orders. In the first, the district court dismissed Russell III and Myrna's complaint with prejudice, ruling that their claims were barred by the applicable three-

year statute of limitations and that their complaint failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). The second order denied Appellants' Federal Rule of Civil Procedure 59(e) motion to vacate the dismissal of the complaint and Rule 15(a) motion requesting leave to file an Amended Complaint. We reverse the district court's order denying the 59(e) and 15(a) motions, and remand with instructions to grant Appellants leave to file their First Amended Complaint.

## I.

The parties in this suit are all members of the same family. Russell A. Firestone III, one of the plaintiffs, is the great-grandson of Harvey S. Firestone, founder of The Firestone Tire & Rubber Company. Myrna O'Dell Firestone, the other plaintiff, is Russell III's mother. Myrna was married to Russell A. Firestone Jr.—Russell III's father—until their divorce in 1974. Defendant, Leonard Firestone, is the oldest living son of Harvey S. Firestone. Leonard also serves as an "advisor" to the Firestone trusts, known as the Harbel Trusts, of which Russell III and other descendants of Harvey Firestone are beneficiaries.

This suit is rooted in intra-family disputes dating back more than two decades. Pursuant to the 1974 divorce, Russell Jr. agreed to pay child support into a trust for Russell III and to pay spousal support to Myrna. When Russell Jr. refused to pay the support owed, Myrna sued for enforcement in Kentucky, obtaining a judgment in 1984. At that time, Russell Jr. was allegedly receiving at least $800,000 a year from the Harbel Trusts, of which Ameritrust Bank served as trustee.

On November 29, 1993, Russell III and Myrna, individually and on behalf of the Russell A. Firestone III Child Support Trust, filed a *pro se* complaint in the United States District Court for the District of Columbia against Leonard Firestone for fraud, intentional infliction of emotional distress, and interference with judgments. They claimed damages in excess of $13 million. The complaint alleged that a "representative" of Leonard Firestone, in "a series of meetings, telephone calls, letters and proposals" commencing in June 1984, encouraged them to "dismiss the judgments [and] appeals" pending against Russell Jr. and settle other unspecified litigation against Ameritrust, the trustee of the Harbel Trusts. Complaint ¶ 3. In exchange, Russell III and Myrna received a written agreement providing "payment guarantees for their past-due, court-ordered child support and spousal support." *Id.* Without explanation, the complaint alleges that Leonard sought the agreement because he would gain "approximately $1 million" in relief from liability in claims filed against him. *Id.* ¶ 4. Relying on Leonard's representations, Russell III and Myrna dismissed their appeals and their actions to enforce their judgments, forfeiting more than $5 million. *Id.* ¶ 6–7. They allege, however, that Leonard's representations were fraudulent from their inception: the payments stopped in April 1987, forcing them into litigation which was unsuccessful. *Id.* ¶¶ 8–9.

Leonard Firestone moved to dismiss the complaint on several grounds including that Russell III and Myrna's claims were barred by the applicable three-year statute of limitations of the District of Columbia, and that they had failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). Leonard's statute of limitations argument is based on the complaint's allegations that the payments of child and spousal support stopped in 1987. Def.'s Mot. to Dismiss at 7–8. According to Leonard, the cessation of the payments put Russell III and Myrna on inquiry notice of their claims against Leonard. Because the suit was not filed until six years later, he claims it is barred by the 3–year statute of limitations. *Id.* at 8–9.

Russell III and Myrna, now represented by counsel, filed an opposition to defendant's motion, arguing that a motion to dismiss was not the proper tool for raising a statute of limitations defense, and that, from the face of the complaint, their allegations were not clearly time-barred. Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss at 1–9. They also argued that their complaint properly pled fraud as required by Rule 9(b). *See id.* at 10. Although Russell III and Myrna did not append a proposed amended complaint,

they asked the court to grant them leave to amend in the event that the complaint failed to "comply with the federal rules." *Id.* at 11. On July 13, 1994, the district court dismissed the complaint with prejudice, stating that Russell III and Myrna's claims were time-barred and that they had failed to plead fraud with particularity.

On July 27, 1994, Russell III and Myrna filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) and requested leave pursuant to Rule 15(a) to file an amended complaint, which they appended to the motions. Without giving its reasons, the court denied both motions. On August 26, 1994, Russell III and Myrna filed a Motion for Reconsideration under Rule 60(b), which the district court denied.

Russell III and Myrna appeal both the dismissal of the original complaint with prejudice and the denials of the 59(e) and 15(a) motions. Since the Rule 60(b) motion was pending at the time of this appeal, and because Appellants have not appealed its denial, it is not before us.

## II.

■  Although Russell III and Myrna appeal both the order dismissing the complaint with prejudice, and the order denying the 59(e) and 15(a) motions, the validity of the latter order rests partly on the propriety of the first. A Rule 59(e) motion "is discretionary" and need not be granted unless the district court finds that there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *National Trust v. Department of State,* 834 F.Supp. 453, 455 (D.D.C.1993), *aff'd in part and rev'd in part on other grounds sub nom. Sheridan Kalorama Historical Ass'n v. Christopher,* 49 F.3d 750 (D.C.Cir.1995) (quoting *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.), *cert. denied* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)). We therefore review a district court's refusal to vacate a judgment under Federal Rule of Civil Procedure 59(e) for abuse of discretion. *See Browder v. Director, Ill. Dep't of Corrections,*

434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978) (discussing the analogous Rule 60(b)). Leave to amend a complaint under Rule 15(a) "shall be freely given when justice so requires." FED.R.CIV.P. 15(a); *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Although the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as "undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment." *Foman,* 371 U.S. at 182, 83 S.Ct. at 230.

■  After the district court dismissed the complaint with prejudice, Russell III and Myrna could amend their complaint only by filing, as they properly did, a 59(e) motion to alter or amend a judgment combined with a Rule 15(a) motion requesting leave of court to amend their complaint. *See Confederate Memorial Ass'n, Inc. v. Hines,* 995 F.2d 295, 299 (D.C.Cir.1993) (describing the procedure). Rule 15(a)'s liberal standard for granting leave to amend governs once the court has vacated the judgment. *See* 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1489 at 694 (2d ed. 1990). But to vacate the judgment, Appellants must first satisfy Rule 59(e)'s more stringent standard. *See id.* Therefore, we first determine whether the district court abused its discretion in failing to vacate the original dismissal with prejudice. If it did, we then ask whether the district court abused its discretion in denying Russell III and Myrna leave to file their amended complaint.

■  With respect to the first issue, we conclude that the denial of the 59(e) motion was an abuse of discretion because the dismissal of the original complaint *with prejudice* was erroneous. Even assuming that the district court properly dismissed the complaint, neither the determination that Russell III and Myrna's claims were time-barred, nor the determination that their complaint failed to plead fraud with particularity support a dismissal *with prejudice.* As we have

repeatedly held, courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. *See, e.g., Richards v. Mileski,* 662 F.2d 65, 73 (D.C.Cir.1981); *Jones v. Rogers Memorial Hosp.,* 442 F.2d 773, 775 (D.C.Cir. 1971). In *Richards* we made clear that, because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred. *See Richards,* 662 F.2d at 73. A dismissal *with prejudice* is warranted only when a trial court "determines that 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Jarrell v. United States Postal Serv.,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (quoting *Bonanno v. Thomas,* 309 F.2d 320, 322 (9th Cir.1962)).

■ Failure to plead fraud with particularity likewise does not support a dismissal with prejudice. To the contrary, leave to amend is "'almost always'" allowed to cure deficiencies in pleading fraud. *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice,* ¶ 9.03 at 9–34 (2d ed. 1986)).

Turning then to the Rule 15(a) issue, we find error in the district court's complete failure to provide reasons for refusing to grant leave to amend. The Supreme Court stated in *Foman* that while the decision to grant or deny leave to amend is within the trial court's discretion, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." 371 U.S. at 182, 83 S.Ct. at 230. We too have emphasized that a proper exercise of discretion requires that the district court provide reasons. *See Parker v. Baltimore & Ohio R.R.,* 652 F.2d 1012, 1018, 1020 (D.C.Cir.1981) (reversing district court's denial of leave to amend, and remanding to the district court either to grant plaintiff leave to amend or provide sufficient reasons for its denial).

Moreover, the record in this case reveals none of the legitimate reasons—such as those articulated in *Foman*—that may justify denial of leave to amend. Futility is the only

possible reason the district court could have had for denying the amendment. Amendment, however, would not be futile—the Amended Complaint is not time-barred and it pleads fraud with particularity.

■ With respect to the statute of limitations, the parties all agree that Russell III and Myrna's three claims are governed by the District of Columbia's three-year statute of limitations for claims based on fraud, intentional infliction of emotional distress, and interference with judgments. *See* D.C.Code § 12–301(8) (1995). Under District of Columbia law, a tort action accrues "when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Knight v. Furlow,* 553 A.2d 1232, 1234 (D.C.1989); *see also Goldman v. Bequai,* 19 F.3d 666, 671–72 (D.C.Cir.1994). Fraudulent concealment, however, tolls the running of the statute of limitations. In *Larson v. Northrop Corp.,* we held that to prove fraudulent concealment, plaintiffs must "'show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence.'" 21 F.3d 1164, 1172 (D.C.Cir.1994) (quoting *Foltz v. U.S. News & World Report, Inc.,* 663 F.Supp. 1494, 1537 (D.D.C.1987), *aff'd,* 865 F.2d 364 (D.C.Cir.), *cert. denied,* 490 U.S. 1108, 109 S.Ct. 3162, 104 L.Ed.2d 1024 (1989) (alteration in original)). Generally, fraudulent concealment requires that the defendant make an affirmative misrepresentation tending to prevent discovery of the wrongdoing. *See Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1491 (D.C.Cir.1989). A failure to disclose by one who has a duty to do so— such as someone standing in a fiduciary or confidential relationship—also can establish fraudulent concealment. *Id.* at 1496. Once a plaintiff shows fraudulent concealment, a defendant wishing to assert "a defense based on the plaintiff's lack of due diligence must show something closer to actual notice than the merest inquiry notice that would be sufficient to set the statute of limitations running

in a situation untainted by fraudulent concealment." *Riddell,* 866 F.2d at 1491.

Applying these standards, we find that Russell III and Myrna have pled adequately that Leonard engaged in affirmative misrepresentations to conceal his wrongdoing. The Amended Complaint alleges, in short, that Russell III and Myrna had sued Ameritrust—the trustee of Russell Jr.'s trust and the other Harbel trusts—to collect on the judgment for child and spousal support, *see* Amended Compl. ¶ 12; that Bank One replaced Ameritrust as trustee pursuant to a settlement agreement in other litigation between the Firestone family and Ameritrust, *see id.* ¶¶ 18–20; that under the settlement agreement, Ameritrust was to give Leonard $1 million, but that Ameritrust refused to do so until Russell III and Myrna dismissed their lawsuits against Ameritrust, *see id.* ¶¶ 18–19, 24; that Leonard's representatives convinced Russell III and Myrna to dismiss their lawsuit against Ameritrust and to sign the 1985 agreement by promising that Bank One, unlike Ameritrust, would be a "friendly" bank, *id.* ¶ 25, and would pay them the negotiated sum, *see id.* ¶¶ 25, 32; that when payments under the 1985 agreement ceased, Leonard told Russell III and Myrna that he had no control over Bank One or the Harbel Trusts, *see id.* ¶ 48; and finally that in November 1993, in their subsequent suit against Bank One to enforce the 1985 agreement, Russell III and Myrna learned that Leonard had great influence and power over the Harbel Trusts, *see id.* ¶¶ 33, 51–52, and that he had never intended to fulfill the 1985 agreement, *see id.* ¶¶ 50–51. On the key issue of due diligence, according to the Amended Complaint, although Russell III and Myrna knew in 1987 that Bank One had stopped payments under the 1985 agreement, they did not know until November 1993 that *Leonard Firestone* effectively controlled Bank One with respect to the Harbel Trusts. *See id.* ¶¶ 48, 50, 55, 58. Thus, while Russell III and Myrna arguably knew about their claims against Bank One in 1987, they did not have actual or constructive notice of their claims against Leonard Firestone until November 1993. *See Hobson,* 737 F.2d at 36 ("[S]imply because a person knows he has been injured by one person cannot reasonably mean he should be held to know of every other participant.").

■ The Amended Complaint thus contains the three allegations required to plead fraudulent concealment: that Leonard Firestone engaged in an on-going scheme to conceal the alleged fraud; that Russell III and Myrna did not have actual or constructive notice of the concealment; and that Russell III and Myrna exercised due diligence, but could not discover the continuing fraud until November 1993. If these allegations are true, then the statute of limitations would not have expired until after Russell III and Myrna filed their original complaint.

This conclusion does not foreclose the district court from determining on a motion for summary judgment, after affording the parties limited discovery, that Russell III and Myrna's complaint is *in fact* time-barred. Summary judgment would be appropriate as long as no contested issues of fact exist. *See Byers v. Burleson,* 713 F.2d 856, 861 (D.C.Cir.1983) ("Summary judgment is not appropriate in a case applying the discovery rule if there is a genuine issue of material fact as to when, through the exercise of due diligence, the plaintiff knew or should have known of her injury."); *see also Riddell,* 866 F.2d at 1484. We conclude only that the district court erred in making this determination on a motion to dismiss. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1115 (D.C.Cir.1985) ("[A] motion to dismiss may be granted on the basis that the action is time-barred only when it appears from the face of the complaint that the relevant statute of limitations bars the action.").

■ Nor does our holding in this case mean that a plaintiff must plead fraudulent concealment in the complaint. *See Connors v. Hallmark & Son Coal Co.,* 935 F.2d 336, 343 n. 12 (D.C.Cir.1991). The statute of limitations is an affirmative defense that defendant must prove: A plaintiff's obligation to plead fraudulent concealment therefore arises only when defendant raises the statute of limitations as a defense.

■ Leonard next argues that the Amended Complaint fails to plead either

fraud or fraudulent concealment with particularity. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake ... shall be stated with particularity." For allegations of fraud, this requires that Appellants state the " 'time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud.' " *Kowal*, 16 F.3d at 1278 (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.1981) (citation omitted), *cert. denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982)). The Amended Complaint meets these requirements—it specifies the time and place of the fraud, *e.g.*, Amended Compl. ¶¶ 38–39; the facts misrepresented, *e.g.*, *id.* ¶¶ 24–25, 33; and what was given up as a consequence, *e.g.*, *id.* ¶¶ 31–32, 37, 40, 43–47.

■ Parties pleading fraudulent concealment "must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts." *Larson*, 21 F.3d at 1173 (internal quotation marks and citation omitted). Russell III and Myrna's allegations regarding Leonard Firestone's control of Bank One and why they did not discover it until November 1993 satisfy this requirement as well.

■ Leonard finally argues that, to the extent that Russell III and Myrna's claim of fraudulent concealment depends on the existence of a fiduciary relationship between Russell III and Leonard, that relationship also must be pled with particularity. We disagree. The reasons behind the particularity requirement—protecting a defendant from reputational harm and "strike" suits, and providing defendant sufficient information to respond to plaintiff's claims, *see generally* 5 WRIGHT & MILLER, *supra* § 1296— apply with less force to the specific question of the existence of a fiduciary relationship. A defendant is unlikely to experience any embarrassment from allegations of the existence of a fiduciary relationship.

■ The allegations of a fiduciary relationship in the Amended Complaint are more than adequate to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure: the Amended Complaint alleges that Leonard represented himself as a patriarch whom they should trust, Amended Compl. ¶ 53; that Leonard encouraged them to ask him for advice and tell him confidential information, *id.* ¶¶ 48–49; that he represented that he had no influence over Bank One's cessation of payments, *e.g.*, *id.* ¶ 54; and that they relied on his representations, *id.* ¶¶ 54–55.

■ As in the case of the statute of limitations issue, Russell III and Myrna will eventually have to prove these allegations. Because the existence of a "fiduciary relationship is a fact-intensive question, involving a searching inquiry into the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties," *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F.Supp. 1018, 1028 (D.D.C.1994), however, it may not be appropriate to resolve this issue on a motion for summary judgment, *id.*

### III.

We find that the district court abused its discretion in refusing to vacate the original dismissal with prejudice. We also conclude that the Amended Complaint is not time-barred on its face and that Russell III and Myrna have pled both fraud and fraudulent concealment with particularity. We therefore reverse the district court's denial of the 59(e) and 15(a) motions and remand with instructions to allow Russell III and Myrna to file their Amended Complaint. Because we reverse on these grounds, we need not reach the other issues raised by Russell III and Myrna.

*So ordered.*