**JUDICIAL WATCH, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF COMMERCE, Defendant.**

No. CIV. A. 95–133(RCL).

United States District Court, District of Columbia.

Dec. 5, 2000.

Larry Elliot Klayman, Klayman & Associates, PC, Washington, DC, for Plaintiff.

Marina Utgoff Braswell, U.S. Attorney's Office, Stuart Henry Newberger, Crowell & Moring, L.L.P., Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Judith Means comes before the Court as an interested party. She moves the Court to delete a portion of its December 22, 1998 opinion that criticizes her. She further asks the Court for leave to object, and does object, to the plaintiff's motion seeking leave to depose her. For the following reasons, the Court DENIES Ms. Means' motion to alter its opinion. Further, the Court GRANTS her motion for leave to object, but DENIES her motion to be excused from her second deposition.

## BACKGROUND

This matter is yet another scene in a case that the Court has presided over since 1995. In the first four years of the plaintiff's FOIA suit, the government's malfeasance became so great—and so obvious—that it actually moved for summary judgment against itself. This motion was denied by the Court in an opinion dated December 22, 1998. In that opinion, the Court addressed the government's behavior with harsh words, some of which were directed at Ms. Means.

The Court's statement about Ms. Means was in regard to the government's failure to turn over a "minority donor list" that was responsive to the plaintiff's FOIA request. Ms. Means was one of the persons criticized for failing to turn the document over. Specifically, the Court stated that

Ms. Means' failure, and the corresponding failure of her office, to reveal the existence of the [minority] donor list in the months before [the list was eventually revealed to the plaintiff] is certainly among the most egregious abuses that have occurred in this litigation, and Ms. Means' stubborn refusal to admit her complicity in the nondisclosure only aggravates the matter.

*Judicial Watch v. United States Department of Commerce*, 34 F.Supp.2d 28, 36 (D.D.C.1998). Ms. Means asserts that this statement is false. Although the Court did not find her personally liable in any way, she now requests that the Court redact the statement from its opinion because her "professional reputation has been damaged" and because "she has suffered embarrassment and emotional distress as a result." Brief for Means at 3.

## ANALYSIS

### I. Ms. Means' Motion for Correction of the Court's Opinion

The plaintiff's motion in this regard amounts to a motion for reconsider-

ation. Motions for reconsideration are appropriate if a court finds "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or manifest injustice." *McDonnell Douglas Corp. v. NASA,* 109 F.Supp.2d 27, 28 (D.D.C.2000) (Lamberth, J.). *See also Firestone v. Firestone,* 76 F.3d 1205, 1206 (D.C.Cir. 1996); *EEOC v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir.1997). "A trial court has broad discretion to grant or deny a motion for reconsideration." *McDonnell Douglas,* 109 F.Supp.2d at 28. *See also Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 233–34, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995); *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

Ms. Means' motion is predicated on the final factor permitting reconsideration—the need to correct a clear error or manifest injustice. Ms. Means first argues that she was never aware of the minority donor list prior to the time it was finally turned over to the plaintiff. In arguing this, Ms. Means attempts to overcome the testimony of Christine Sopko, who testified under oath that the minority donor list was discussed during a meeting between her, Ms. Means, and two other persons. One of the other persons, AUSA Alexander Shoaibi, confirms that the matter was discussed.[1] Mr. Shoaibi's notes from that meeting contain a reference to the document which is highlighted and surrounded by stars. See Declaration of Alexander Shoaibi at ¶ 8.

Ms. Means tries to overcome the likelihood that the list was discussed by asserting what plaintiff has characterized as a variation of the "iced tea" excuse.[2] She argues that, if the list was discussed, she was probably "engaged in a separate conversation, . . . out of the room, . . . [or] on the phone at the moment." Brief for Means at 14. The Court finds it unbelievable that Ms. Means could have either completely missed the discussion of the list, or never been exposed to the subject through continued interaction with co-counsel.[3] The Court therefore rejects Ms. Means's "iced tea" defense.

Yet Ms. Means still offers an alternative argument. She asserts that even if she was aware of the list, she did not act inappropriately in not turning it over because there was no reason to suspect that the list would fall within the plaintiff's FOIA request. This is perhaps the most incredible of her arguments. She is counsel in a case dealing with the sale of political favors for campaign contributions. A document dealing with "minority donors," found in the files of *the very person*[4] responsible for selecting the trade mission participants is, in the Court's opinion, almost facially responsive to the FOIA re-

1. The Court is encouraged by and thankful for the memorandum and affidavit filed by the U.S. Attorney's office in response to Ms. Means' motion. It is no doubt difficult to oppose a motion filed by a member of one's own camp—especially in a case as contentious as this has been. But the adversary process, to be effective, depends on a blend of vigorous representation and outright candor. The U.S. Attorney's office, contrary to Ms. Means, demonstrates its understanding of this.

2. Plaintiff refers here to the now-famous explanation used by Vice President Gore to distance himself from a conversation in which an unlawful campaign fundraiser was planned. The Vice President explained that he was drinking a lot of iced tea during the fundraising meeting and probably stepped out to the restroom during the key conversation. Although the veracity of the Vice President's explanation has never been adjudicated, the Court finds Ms. Means' version to be well beyond the boundaries of believability.

3. This conclusion is supported by the declaration of AUSA Shoaibi. Mr. Shoaibi asserts that Ms. Means was present at the April 1 meeting for all substantive conversations and that, even if she somehow missed the discussion, he would have consulted with her about the document. *See* Declaration of Alexander Shoaibi at ¶¶ 6, 8.

4. The list was found in the files of Deputy Assistant Secretary Jude Kearny.

quest.[5] At the very least, it is worthy of further investigation—an act Ms. Means failed to take.

Finally, as the recent declarations of Sonya Stewart and AUSA Shoaibi reveal, Ms. Sopko is not the only one asserting that Ms. Means had knowledge of the list. According to Ms. Stewart, there was a "meeting during which all in attendance, including Judith Means, were made aware of the existence of the 'Minority Donor List'" *See* Declaration of Sonya Stewart at 4. As well, AUSA Shoaibi asserts that she was present for all substantive conversations in the April meeting, and was almost certainly consulted about the document soon thereafter. *See* Declaration of Alexander Shoaibi at ¶¶ 6, 8.

Based on the foregoing explanation, the Court is confident that its statement regarding Ms. Means was fair and appropriate. But it should be remembered that, under the standard for reconsideration, the Court need not be so convinced. Rather, this Court need only find that there was clear error in what it said. *See McDonnell Douglas*, 109 F.Supp.2d at 28. The Court can say with confidence that there was none.

## II. Ms. Means' Objection to the Plaintiff's Motion for Leave to Depose Her

 As a preliminary matter, the Court grants Ms. Means' motion for leave to object to the plaintiff's motion. The Court, however, does not see it fit to excuse her from a second deposition. As explained in another opinion issued by the Court this date, the plaintiff in this case is permitted to depose individuals who are reasonably thought to have information relevant to the frustration of its first FOIA search. Ms. Means was a high ranking lawyer in the Department of Commerce and closely involved in the FOIA search requested by the plaintiff. It is reasonable to think she would have further information relevant to any potential malfeasance by the government.[6]

Ms. Means is rightly concerned about the risk of harassment in her second deposition. The parties in this case have several times demonstrated their distaste for each other. But Ms. Means' second deposition will have supervision that was unavailable in her first—the presence of Magistrate Judge John Facciola. The Court is confident that Judge Facciola will adequately maintain the fairness and propriety of her second deposition.

### CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Ms. Means' motion for a correction of the Court's December 1998 opinion [688–2] is DENIED; further, it is

ORDERED that Ms. Means' motion for leave to object [688–1] is GRANTED; further, it is

ORDERED that Ms. Means objection to the plaintiff's motion for leave to depose her [688–1] is DENIED.

SO ORDERED.

5. Ms. Means asserts that the list was actually titled "DNC Friends," not "Minority Donor List." See Brief for Means at 4. In this regard, she asserts that a list so titled is less obviously a responsive document. Even if this were the case (which is a big "if" in a case dealing with campaign contributions to the DNC), this does not explain the fact that a more descriptive title—"DNC document about donors"—appeared in AUSA Shoaibi's notebook after the April 1 meeting at which Ms. Means was present.

6. Although Ms. Means has already been deposed once in this matter, the Court finds that a second deposition is not duplicative because the first deposition was taken four months before the existence of the minority donor list was known. Although the plaintiff may thus re-depose Ms. Means, it must limit its questioning to malfeasance during the first search that was not covered during the first deposition.