**PEOPLE FOR the ETHICAL TREATMENT OF ANIMALS, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants.**

**Civil Action No. 13–976 (JEB)**

United States District Court, District of Columbia.

Signed May 27, 2014

Delcianna J. Winders, PETA Foundation, Washington, DC, for Plaintiff.

Hector G. Bladuell, U.S. Department of Justice, Washington, DC, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

JAMES E. BOASBERG, United States District Judge

On December 16, 2013, this Court issued an Opinion that dismissed a lawsuit brought by People for the Ethical Treatment of Animals alleging that the United States Department of Agriculture had unlawfully failed to implement the Animal Welfare Act with respect to birds. The Court found that the actions PETA sought to compel USDA to take—promulgating bird-specific regulations and enforcing the AWA against bird abusers—were commit-

ted to the agency's discretion by law. On January 13, 2014, PETA moved for reconsideration of the second part of that decision. PETA also asked, in the alternative, for leave to amend its Complaint. The government opposed both requests. Because the Court stands by its initial conclusions, and because leave to amend is not allowed at this juncture, it will deny PETA's Motion.[1]

## I. Background

The background of this case is set forth fully in *People for the Ethical Treatment of Animals v. United States Department of Agriculture,* No. 13–976, 7 F.Supp.3d 1, 2013 WL 6571845 (D.D.C. Dec. 16, 2013). To recap briefly, in 2002, Congress amended the AWA to include birds as creatures deserving of legal protection. *See id.* at 4–5, 2013 WL 6571845 at *1. Since that time, however, USDA has not promulgated any animal—welfare regulations specific to birds—as it has for, say, dogs, cats, and guinea pigs—instead relying solely on the general regulations applicable to all covered animals. *See id.* at 5–6, 2013 WL 6571845 at *2. Nor has USDA enforced even those general regulations against bird abusers, with a few officials responding to complaints about the inhumane treatment of birds by claiming (incorrectly) that avians either are not regulated by USDA or do not fall under USDA jurisdiction. *See id.* Frustrated by USDA's continued inaction in promulgating bird–specific regulations and in enforcing the general regulations with respect to birds, PETA filed suit under the APA, asking the Court to compel these "agency action[s] unlawfully withheld." 5 U.S.C. § 706(1).

The Court dismissed both of PETA's claims. For the regulation–related claim, the Court explained that PETA could only compel USDA to take action that was required by law. *See PETA,* 7 F.Supp.3d at 13–14, 2013 WL 6571845, at *8. The AWA, however, left to USDA's discretion whether to promulgate specific standards for each covered animal or to instead rely on the general animal-welfare standards. *See id.* PETA has not asked the Court to reconsider this part of its decision.

For the enforcement–related claim, the Court noted that Section 701(a) of the APA barred judicial review of actions committed to agency discretion. *See id.* at 9–11, 2013 WL 6571845 at *5. In *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court held that the quintessential example of such an action is the decision not to bring an enforcement action, and that such decisions should be considered "presumptively unreviewable" under the APA. *Id.* at 832, 105 S.Ct. 1649. To overcome that presumption, a plaintiff must show that "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 833, 105 S.Ct. 1649.

PETA could not overcome that presumption in this case, but it did invoke an exception to the *Chaney* rule, previously articulated by the D.C. Circuit in *Crowley Caribbean Transp. v. Pena,* 37 F.3d 671 (D.C.Cir.1994). There, the Court of Appeals held that while an agency's decision not to bring a *specific* enforcement action was presumably unreviewable, a plaintiff could challenge an agency's *general* policy of non–enforcement. *See id.* at 676–77. PETA claimed, accordingly, that USDA had a general policy not to enforce the AWA with respect to birds, and that its

---

1. The Court regrets not having addressed this Motion sooner. Other substantial motions had precedence in the queue.

claim was therefore judicially reviewable. *See PETA,* 7 F.Supp.3d at 12–13, 2013 WL 6571845, at *7.

The Court rejected that argument. Because PETA could not "identify any concrete statement from USDA announcing a general policy not to regulate birds under the AWA," the Court found that the *Crowley* exception did not apply. *Id.* In fact, USDA expressly denied the existence of any such policy, affirming "that it 'expressed its official position' on the matter 'when it promulgated regulations bringing birds under the scope of the AWA.'" *Id.* (citation omitted). As the weight of the precedent seemed to require some kind of announced nonenforcement policy in order for a plaintiff to invoke the *Crowley* exception, and since there were significant practical difficulties in reviewing the lawfulness of a policy that a plaintiff had failed to identify and that the agency claimed did not exist, the Court concluded that PETA's claim must fail. *See id.* at 12–14, 2013 WL 6571845 at *7–8. The Court therefore granted USDA's Motion to Dismiss.

PETA now moves for reconsideration, requesting that the Court vacate the dismissal of its enforcement–related claim and permit that cause of action to go forward. Alternatively, PETA requests leave to amend its Complaint so that it may elaborate on its allegations regarding USDA's non–enforcement policy with respect to birds. The Court now turns to the merits of those arguments.

## II. Legal Standard

Rule 59(e) permits the filing of a motion to alter or amend a judgment when such motion is filed within 28 days after the judgment's entry. The court must apply a "stringent" standard when evaluating Rule 59(e) motions. *Ciralsky v. CIA,* 355 F.3d 661, 673 (D.C.Cir.2004). "A Rule 59(e) motion 'is discretionary' and need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir. 1996) (quoting *Nat'l Trust v. Dep't of State,* 834 F.Supp. 453, 455 (D.D.C.1993)); *see also* 11 C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.* § 2810.1 (3d ed.1995) ("four basic grounds" for Rule 59(e) motion are "manifest errors of law or fact," "newly discovered or previously unavailable evidence," "manifest injustice," and "intervening change in controlling law"). Rule 59(e), moreover, "is not a vehicle to present a new legal theory that was available prior to judgment." *Patton Boggs LLP v. Chevron Corp.,* 683 F.3d 397, 403 (D.C.Cir.2012).

## III. Analysis

### A. *Arguments for Reconsideration*

PETA says the Court should reconsider its dismissal of the group's enforcement–related claim for two reasons. First, it argues that the Court was simply wrong on the law—according to PETA, an agency need not officially express a general non–enforcement policy in order for a plaintiff to invoke the *Crowley* exception. Second, PETA contends that the Court failed to give deference to its allegation that USDA had a general non–enforcement policy with respect to birds, thus applying a higher standard of review than is appropriate at the motion–to–dismiss stage. The Court will take each argument in turn.

### 1. *Wrong on the Law*

As an initial matter, PETA claims that the Court erred on the substantive law because the relevant precedent does not in fact require a plaintiff to identify any concrete statement of the general

non–enforcement policy that it seeks to challenge in order to invoke the *Crowley* exception. In support of this argument, the group cites *Adams v. Richardson*, 480 F.2d 1159 (D.C.Cir.1973), where the Court of Appeals permitted several plaintiffs to sue the former Department of Health, Education, and Welfare for its failure to cut off federal funds from public schools that remained segregated in violation of Title VI of the Civil Rights Act. *See id.* at 1161–63. There, PETA notes, the plaintiff never showed that HEW's non–enforcement policy *vis–à–vis* Title VI had been expressly articulated anywhere, and yet the Court of Appeals still allowed the case to move forward.

For several reasons, however, *Adams* does not carry the day for PETA. First, that decision came down more than a decade before either *Chaney* or *Crowley*. It thus has limited relevance for understanding the scope of those two opinions. Second, even if the *Chaney* rule had applied to the situation in *Adams*, the plaintiffs there would likely have been able to overcome the presumption against unreviewability of non–enforcement decisions. As the *Adams* court noted, "The terms of Title VI are not so broad as to preclude judicial review. A substantial and authoritative body of case law provides the criteria by which noncompliance can be determined." *Id.* at 1162. The *Crowley* exception to the presumption against unreviewability, even if it existed at the time *Adams* was decided, would thus not have applied to that case.

Finally, *Adams* did not pose the same practical problem as the situation here does. In this case, without some official statement from USDA explaining that it does not intend to enforce the AWA with respect to birds, the Court cannot know whether such a policy actually exists, or, alternatively, if the agency has simply not

yet encountered a bird–abuse incident it considers worthy of its time and resources. In *Adams*, by contrast, the plaintiffs alleged that HEW had neglected to enforce Title VI by *failing to cut off federal funds* from segregated schools. The existence of the non–enforcement policy was therefore obvious—keeping the funds flowing was, effectively, an expression of the agency's general non–enforcement policy. The D.C. Circuit thus described that case as one where the agency had "consciously and *expressly* adopted a general policy which is in effect an abdication of its statutory duty." *Id.* at 1162 (emphasis added). The same cannot be said of the matter before this Court.

In the absence of doctrinal support for its position, PETA makes the practical argument that the Court's dismissal of this case "would ... give agencies Carte blanch [*sic*] to adopt and engage in non–enforcement policies so extreme as to amount to abdication of their statutory responsibilities and to avoid judicial review simply by not expressly formalizing the policies." Pl. Mot. at 12. The Court finds it hard to believe that an agency might coordinate such a policy via an internal whisper campaign, without leaving any paper trial that could be uncovered through a FOIA request or a whistleblower. There is no need, then, to twist the precedent here to accommodate that near impossibility, especially given the downsides of the rule advocated by PETA, already explained at length in the Court's prior decision. *See PETA*, 7 F.Supp.3d at 13–14, 2013 WL 6571845, at *8. USDA, moreover, affirmed "that it 'expressed its official position' on the matter 'when it promulgated regulations bringing birds under the scope of the AWA,'" *id.* at 12, 2013 WL 6571845 at *7 (citation omitted), and the agency has already begun the process of developing bird–specific animal-welfare

standards. *See PETA,* 7 F.Supp.3d at 5–6, 2013 WL 6571845, at *2.

■ The bounds of the *Crowley* exception are clear: "[A]n agency's statement of a general enforcement policy may be reviewable for legal sufficiency where the agency has expressed the policy as a *formal regulation* ... or has otherwise articulated it in some form of *universal policy statement,*" which might conceivably include more informal documents, such as one "announcing a particular non–enforcement decision [that] ... actually lay[s] out a general policy." *Crowley,* 37 F.3d at 676–77 (emphasis added). PETA has identified no such regulation, statement, or document in this case. The group has not shown that the Court committed any error, let alone a "clear error," in dismissing its claim on this basis. *Firestone,* 76 F.3d at 1208.

### 2. Heightened Standard of Review

■ PETA's second argument is that the Court erred by applying a heightened standard of review when it evaluated Defendants' Motion to Dismiss because it failed to accept as true PETA's allegation that USDA had a general non–enforcement policy with respect to birds.

The standard for evaluating a motion to dismiss for failure to state a claim is familiar to all: The Court must "treat the complaint's factual allegations as true," *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000), although it need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *Trudeau v. FTC,* 456 F.3d 178, 193 (D.C.Cir.2006) (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (internal quotation marks omitted)). "[D]etailed factual allegations" are not necessary, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,

555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), but "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). The plaintiff must "offer more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action,'" *Nat'l ATM Council, Inc. v. Visa, Inc.,* 922 F.Supp.2d 73, 79 (D.D.C. 2013) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937)—it has to put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Though the plaintiff's claim may survive even if "recovery is very remote and unlikely," *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S.Ct. 1955.

In arguing that the Court imposed an impermissibly higher standard, PETA hammers on a statement in the prior decision dismissing this case. There, the Court, in explaining the practical justifications for its reading of *Crowley,* mentioned in passing that "where, as here, a plaintiff simply *alleges without proof* that an agency has a general policy of non–enforcement, there is by definition almost nothing for the Court to review." *PETA,* 7 F.Supp.3d at 13, 2013 WL 6571845, at *8 (emphasis added). As PETA notes, that aside seems to demand more than what is required at the motion-to-dismiss stage, where the Court "must treat the complainant's factual allegations as true." *Sparrow,* 216 F.3d at 1113.

The main body of the Opinion, however, which actually explained why PETA's claim did not fall within the *Crowley* ex-

ception, used language that was more politic: "[B]ecause [PETA] *cannot identify* any concrete statement from USDA announcing a general policy not to regulate birds under the AWA, the group cannot prevail on this point." *PETA,* 7 F.Supp.3d at 12, 2013 WL 6571845, at *7 (emphasis added); *see also id.* at 13, 2013 WL 6571845 at *8 ("There is good reason . . . for requiring plaintiffs *to cite* to some kind of official, concrete statement of the agency's general enforcement policy in order for them to invoke this exception to *Chaney.*") (emphasis added); *id.* ("To the extent that [PETA's claim] is a challenge to USDA's 'general enforcement policy' with respect to birds, PETA *has not identified* any concrete statement of that policy for the Court to review.") (emphasis added). This phrasing better captures the Court's intended meaning.

To invoke the *Crowley* exception and survive Defendants' Motion to Dismiss, then, PETA needed to identify—or, at the very least, plausibly allege the existence of—some concrete expression of the general non-enforcement policy that it sought to challenge. The facts alleged in its Complaint, however, do not support any such inference. To bolster its bare allegation that "USDA has consciously and expressly adopted a general policy of not enforcing the AWA with regard to birds," PETA's Complaint notes only that (1) USDA has not yet promulgated bird-specific animal-welfare regulations, (2) USDA has not yet brought an enforcement action for bird mistreatment, and (3) a handful of USDA officials have at times suggested that birds do not fall within the agency's authority. Compl., ¶¶ 20–22. At the same time, however, the Complaint also concedes that USDA had previously published an Advance Notice of Proposed Rulemaking announcing its intention to extend enforcement of the AWA to birds and seeking public comment to aid in the development of bird–specific animal–welfare standards. *See id.,* ¶ 14 (citing Regulations and Standards for Birds, Rats, and Mice, 69 Fed. Reg. 31537, 31537–39). The Court may consider such material when it weighs the sufficiency of PETA's claim. *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C.Cir.1997). Even accepting PETA's alleged facts as true, then, its assertion that USDA has expressly articulated a general non–enforcement policy with respect to birds does not rise to the plausibility threshold set by *Twombly* and *Iqbal.* While it is *possible* that this claim has merit, it is mired at "the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

██ PETA insists that the Court has it backward. "Without the benefit of the administrative record and discovery," the group says "it is not possible at this juncture to know" whether USDA has officially adopted a general non–enforcement policy with respect to birds. Mot. at 11. But in fact, it is PETA that has reversed the principles of civil procedure: "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery,* not to find out if it has any basis for a claim." *Mama Cares Found. v. Nutriset Societe Par Actions Cimplifiee,* 825 F.Supp.2d 178, 184 (D.D.C. 2011) (citing *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1327 (Fed.Cir. 1990)). The group may not nakedly assert that USDA has officially adopted a general non–enforcement policy with respect to birds in order to go on a fishing expedition for evidence to support its allegation. As the Court mentioned earlier, other avenues are available for PETA to seek out that information.

PETA also cites to two district court decisions—already raised in its previous motion and acknowledged in the Court's

dismissal—where plaintiffs were permitted to invoke the *Crowley* exception and proceed past the motion–to–dismiss stage on thinner allegations than the ones in this case. Mot. at 11 (citing *Roane v. Holder*, 607 F.Supp.2d 216 (D.D.C.2009); *Jones v. Office of the Comptroller*, 983 F.Supp. 197 (D.D.C.1997)). Those decisions do not bind this Court, however, and given that the plausibility inquiry is a "context-specific task," *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937, they are of limited relevance. Both of those cases, moreover, preceded *Iqbal's* affirmation of the higher pleading standard necessary to survive a motion to dismiss—one even preceded *Twombly's* initial articulation of that standard. They therefore do not change the outcome here.

Even treating the facts in PETA's Complaint as true, the group has failed to plausibly identify a concrete expression of the general non–enforcement policy it seeks to challenge. The Court did not err in dismissing its claim.

### B. *Request to Amend Complaint*

In the event that the Court declines to reconsider its prior decision dismissing this case, PETA alternatively seeks leave to amend its Complaint pursuant to Rule 15(a) in order to bring its allegations up to the requisite pleading standard. Specifically, PETA asks to add a reference to an updated Inspection Guide that USDA released after briefing on the Motion to Dismiss had concluded, which the group says would bolster its allegations regarding USDA's purported nonenforcement policy with respect to birds.

██ The Court is unable to grant PETA's request. "Rule 15(a) provides that leave to amend 'shall be freely given when justice so requires.' " *Ciralsky*, 355 F.3d at 673. "[O]nce a final judgment has been entered," however, "a court cannot permit an amendment unless the plaintiff

'first satisf[ies] Rule 59(e)'s more stringent standard' for setting aside that judgment." *Id.* (quoting *Firestone*, 76 F.3d at 1208). Although a court may grant a motion for reconsideration based on "the availability of new evidence," *Firestone*, 76 F.3d at 1208 (quoting *Nat'l Trust*, 834 F.Supp. at 455), PETA mentions the Inspection Guide only in connection with amending its Complaint; it does not argue that the Guide is a ground to reconsider the prior dismissal of its case, and it is doubtful that such an argument would succeed anyway. Because the Court has rejected PETA's Motion to Reconsider its prior judgment under Rule 59(e), then, it must also reject its entreaty to amend its Complaint. *See id.*; *see also W. Wood Pres. Inst. v. McHugh*, 292 F.R.D. 145, 147 (D.D.C.2013) ("[T]he Court may only consider plaintiffs' motion for leave to amend if it first grants plaintiffs' motion for reconsideration."). PETA has no answer to this obstacle because there is none.

### IV. Conclusion

For the foregoing reasons, the Court ORDERS that Plaintiff's Motion for Reconsideration is DENIED.