**NATIONAL TREASURY EMPLOYEES UNION, Plaintiff,**

v.

**Constance NEWMAN, Director, Office of Personnel Management, Defendant.**

**Civ. A. No. 90–1165 (JHG).**

United States District Court, District of Columbia.

July 22, 1991.

Clinton Wolcott, Asst. Counsel, NTE, Richard T. Seymour, Lawyer's Committee for Civil Rights Under Law, Washington, D.C., for plaintiff.

Mary E. Goetten, Anne M. Gulyassy, Eric J. Segall, Attys., Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

### I

Plaintiff, a union of federal employees, brought this action to challenge the promulgation by defendant Office of Personnel Management ("OPM") of a new program of examinations governing hiring for 112 career positions with the federal

government.[1] This program, named "Administrative Careers with America" ("ACWA"), consists of a competitive procedure in which examination scores are combined with an applicant's score on an "Individual Achievement Record," ("IAR"), a questionnaire purporting to measure an applicant's character.[2] ACWA was created to replace the "Schedule B" hiring process that in turn had been implemented to replace the former Professional and Administrative Career Examination ("PACE") suspended under this Court's direction in the *Luevano* decree. *See Luevano v. Campbell*, 93 F.R.D. 68 (D.D.C.1981); *see also National Treasury Employees Union v. Horner*, 854 F.2d 490 (D.C.Cir.1988) ("NTEU I"). Plaintiff alleges OPM promulgated ACWA unlawfully because it failed to follow the procedures mandated by the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*

Pending before the Court are the defendant's motion to dismiss and the plaintiff's motion for summary judgment. After full consideration of the pleadings and a hearing on the record, and for the reasons set forth below, defendant's motion is denied and plaintiff's motion is granted.

## II

### A. Standing

Defendant contends that plaintiff lacks standing to bring this action. To maintain a case in federal court, a plaintiff must show that it has "suffered (1) some actual or threatened injury that (2) fairly can be traced to the challenged action and (3) is likely to be redressed by a favorable decision." *City of Los Angeles v. National Highway Traffic Safety Administration*, 912 F.2d 478, 483 (D.C.Cir.1990) (quotations and citation omitted).

OPM maintains that plaintiff fails to demonstrate a cognizable injury to itself to pursue the claim on its own behalf or on behalf of its members. OPM argues that depriving NTEU of the opportunity to comment does not constitute real, immediate, and objective harm. Furthermore, OPM notes that NTEU failed to assert that any of its members wished to comment on ACWA nor did it identify any concrete or immediate harm to its members caused by the inability to comment on the program.

Defendant's arguments are not convincing. Plaintiff clearly alleges a cognizable injury in paragraph 18 of its complaint: deprivation of its right (and its members' right) to an opportunity to comment on ACWA. "[I]t is well established that the harm suffered by those who would otherwise participate in agency rulemaking under the APA is to be considered irreparable when the agency fails to afford them their rights to such participation." *Community Nutrition Institute v. Butz*, 420 F.Supp. 751, 757 (D.D.C.1976). Plaintiff, as the exclusive bargaining representative of approximately 140,000 federal employees, is unquestionably an interested party in OPM rulemaking proceedings and would undoubtedly participate in any such proceedings, as it often has in the past. Indeed, real harm may be assumed where there is a failure of the government to follow the APA. This injury—denial of the opportunity to participate—is more than fairly traceable to OPM's alleged inaction (failure to publish for notice and comment), and would be redressed by allowing plaintiff that opportunity. *See also National Treasury Employees Union v. Cornelius*, 617 F.Supp. 365, 366-67 (D.D.C.1985) (finding no merit in defendant OPM's contention that plaintiff lacked standing where plaintiff alleged substantive and procedural flaws in OPM's rulemaking).

---

1. Federal Personnel Manual System Bulletin 337–72 (OPM, Apr. 20, 1990) (Complaint, Attachment 1).

2. The complaint also alleged that the implementation of a computer referral scheme based on applicants' college grade point averages, known as the "Automated Applicant Referral System," violates the federal civil service statute, 5 U.S.C. § 3301 *et seq.* OPM recently determined to discontinue the AARS indefinitely, and the parties agree that this issue is now moot. Plaintiff's Reply to Defendant's Opposition to Motion for Summary Judgment at 2, 10; Defendant's Memorandum of Points and Authorities in Further Support of Motion to Dismiss at 2.

It is clear that plaintiff NTEU has standing to bring this challenge. Accordingly, the merits of plaintiff's claim shall now be examined.

## B. Administrative Procedure Act Requirements

1. The Civil Service Reform Act of 1978 provides that the Director of OPM shall publish in the Federal Register general notice of any rule or regulation which is proposed by the Office and the application of which does not apply solely to the Office or its employees. Any notice shall include the matter required under section 553(b)(1), (2) and (3) of this title.

5 U.S.C. § 1103(b)(1). Although defendant halfheartedly argued[3] that ACWA is not a program subject to rulemaking, it is clearly a "rule" within the meaning of the APA,[4] and therefore under the statute must be promulgated pursuant to the APA.

The program creates methods for securing federal employment. In a Federal Register notice published several months after promulgation of .ACWA, *see infra*, OPM wrote that it "ordinarily does not publish a notice in the Federal Register when examinations are announced," 55 Fed.Reg. 36367, 36368 (Sept. 5, 1990), language suggesting that the agency considered the program outside the purview of APA. This attempt to skirt the issue cannot succeed. The civil service statute labels the standards governing entrance into competitive service as "rules" and "regulations." *See, e.g.*, 5 U.S.C. § 3301. ACWA also fits comfortably within the definition of a substantive rule in that it "effect[s] a change in existing law or policy." *Alcaraz v. Block*, 746 F.2d 593, 613 (9th Cir.1984). ACWA institutes new competitive examinations to replace the prior system (Schedule B excepted service[5]) by which employees could seek excepted service positions.

The determination that ACWA is a rule is also bolstered by the fact that the system it replaces was effectuated through informal notice and comment rulemaking, *see NTEU I*, 854 F.2d at 492, and this Circuit labeled the decision to implement the previous system "a major policy decision" by OPM. *Id.* at 496. In light of these considerations, it is difficult not to conclude that the ACWA is subject to the APA.

2. Since the program should have been promulgated via notice and comment rulemaking, it is similarly obvious that OPM's implementation of ACWA failed to fulfill that statute's requirements. As mentioned previously, on April 20, 1990 OPM issued a "Federal Personnel Manual Bulletin" (directed to heads of departments and independent establishments) explaining that as of May 1, 1990, applications would be accepted for new examinations covering positions formerly filled under the PACE exam and Schedule B excepted service hiring. Subsequently, in a Federal Register notice labeled a "final rule," OPM announced that the regulations establishing the Schedule B hiring scheme would be eliminated on July 1, 1990. 55 Fed.Reg. 26419 (June 28, 1990).[6] On July 5, 1990, OPM issued another FPM Bulletin to Heads of Departments and Independent Establishments explaining the conversion of certain employees' status subsequent to the revocation of Schedule B authority. OPM, FPM Bulletin 315–131 (July 5, 1990), attached as Exh. A to defendant's Motion to Dismiss. Finally, in September 1990, OPM published a "Notice" in the Federal

---

**3.** In its pleadings, defendant did not touch on the issue of APA applicability. At the hearing held on these motions, when asked by the Court if ACWA were subject to the APA, counsel for defendant responded that "[w]e don't want to litigate the question." Transcript at 8.

**4.** The statute states that a rule "means the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, proce-

dure, or practice requirements of an agency...." 5 U.S.C. § 551(4).

**5.** *See generally NTEU I*, 854 F.2d at 492–93.

**6.** The notice contained a "Waiver of Notice of Proposed Rulemaking and 30–day Delay of Effective Date," as authorized under 5 U.S.C. § 553(b)(3)(B), (d)(3). This notice is not being challenged.

Register, the summary section of which states in full: "This notice describes examination procedures for Administrative Careers with America [ACWA]. Interested parties are invited to submit comments." 55 Fed.Reg. at 36,367.

This notice came too late and does not fulfill the purposes of the APA. It was not a notice of a proposed action; rather, *post facto*, it describes action already taken by the agency.[7] Indeed, OPM stated that the notice was not published for any information-gathering or participation purposes:

> OPM is implementing this system of examinations pursuant to 5 U.S.C. § 3301(2). OPM ordinarily does not publish a notice in the Federal Register when examinations are announced. However, because of the unique circumstances which preceded the implementation of the ACWA and because OPM wishes to give the widest possible publicity to the program, OPM takes this opportunity to invite comments from interested members of the public.

55 Fed.Reg. at 36368.

The failure to comply with the APA's mandate of rulemaking via notice to the public, and the failure to invite, receive, and respond to comments from the public, is patent. Accordingly, the rule must be invalidated.

## C. Mootness

■ OPM contends that, in any event, NTEU's claim seeking full APA notice and comment rulemaking on the ACWA program is moot under *Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Commission*, 680 F.2d 810 (1982) ("*NRDC*"). In that case, the plaintiff had filed a petition for review of a certain rule it contended had been invalidly promulgated. After the petition was filed, and after the court of appeals granted a stay of the rule but before oral argument in the court, the defendant Commission reinitiated rulemaking, providing notice and oppor-

tunity for comment, and repromulgated the rule.

This case is distinguishable. In *NRDC*, the court stated that "[i]n light of the Commission's *repromulgation* of the rule after providing notice and opportunity for comment, we conclude that this issue is now moot." *Id.* at 813 (emphasis added). There has been no promulgation, much less *re*promulgation, of the rule at issue here.

Furthermore, even were this Court to stretch the APA's contours and find that the September, 1990 notice in the Federal Register somehow magically transforms the ACWA into a fully compliant APA-subject rule, there is another distinguishing feature to *NRDC*. There, plaintiff had no complaint with the repromulgation of the rule; it only attacked the initial implementation. Here, there was no initial implementation.

Finally, defendant argues that notwithstanding any other arguments plaintiff might have, the publication of the above-described "notice" fulfilled the purposes of the APA and plaintiff could obtain no more relief than it has already. In other words, defendant appears to claim that, like the Commission in *NRDC*, there would be no point to ordering it "to do something that it has already done." *Id.*

Again, the analogy is inapposite. First of all, it has not done what it was supposed to do. OPM attempts to argue that because NTEU was involved informally in the long-term development of ACWA, and was generally kept apprised as to the growth of the program, it could not gain anything by a round of notice and comment rulemaking. This approach contradicts both the letter and the spirit of the APA, which demands "openness, explanation, and participatory democracy" in the rulemaking process. *Weyerhauser Co. v. Costle*, 590 F.2d 1011, 1027 (D.C.Cir.1978).

Finally, it is clear that post-hoc publication and opportunity for comment does not pass APA muster. Section 553 provides that "notice and an opportunity for com-

---

7. This is evident even on a grammatical level, in OPM's use of the present tense in describing the program. *E.g.*, "The new examinations ... re- *place* both the alternative competitive examinations and the Schedule B appointing authority." 55 Fed.Reg. at 36368 (emphasis added).

ment are to *precede* rulemaking." *New Jersey v. EPA,* 626 F.2d 1038, 1050 (D.C.Cir.1980). This requirement is strictly enforced because an agency is not likely to be receptive to suggested changes once the agency "puts its credibility on the line in the form of final rules." *National Tour Brokers Association v. United States,* 591 F.2d 896, 902 (D.C.Cir.1978). In any event, *"post hoc* comment was not contemplated by the APA and is generally not consonant with it." *New Jersey,* 626 F.2d at 1038. ACWA was not validly implemented and therefore must be invalidated.

### III

There remains the question of relief.

OPM will be ordered to engage in notice and comment rulemaking on ACWA on a specified schedule. As to the program as it currently stands, neither party desires a return to the *status quo ante,* which is the usual remedy when an agency rule has been invalidated. *E.g., Reeder v. FCC,* 865 F.2d 1298 (D.C.Cir.1989). Plaintiff instead requests, as rulemaking proceeds, that the ACWA examinations (utilizing the IAR) that have been developed for jobs that were governed by the Schedule B hiring process be retained.[8] That approach is appropriate in light of the information gathered to date and continuing to be collected by OPM, the plaintiff, and the *Luevano amicus.*

All parties are to be commended for their cooperation and open-mindedness on this important matter.

### IV

Accordingly, it is hereby

ORDERED that defendant's motion to dismiss is denied; it is

FURTHER ORDERED that plaintiff's motion for summary judgment is granted; a judgment accompanies this Order. It is

FURTHER ORDERED that defendant OPM promulgate the Administrative Careers with America Program via notice and

comment rulemaking as provided in 5 U.S.C. § 553(b), (c). A notice of proposed rulemaking shall be published in the Federal Register no later than 45 days from the date of this Order, and a final rule shall issue no later than 120 days after that notice of proposed rulemaking has been published. ACWA shall not be suspended in the interim.

IT IS SO ORDERED.

---

**8.** Plaintiff recently withdrew its previous requests that, pending rulemaking, the IAR be abandoned and the sixteen job-specific examina-

tions that were replaced by the ACWA grouped examinations be reinstated.