**PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Kansas Gas Service Company, et al., Intervenors.**

**No. 98–1048.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1999.

Decided Nov. 26, 1999.

Brian D. O'Neill argued the cause for petitioner. With him on the briefs were Merlin E. Remmenga, F. Nan Wagoner and David P. Sharo.

David H. Coffman, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were Jay L. Witkin, Solicitor, John H. Conway, Deputy Solicitor, and Susan J. Court, Special Counsel.

Douglas E. Winter was on the brief for intervenors Riverside Pipeline Company, L.P., et al. James J. Murphy entered an appearance.

David A. Glenn, Gregory Grady and Michael J. Thompson were on the brief for amicus curiae Transcontinental Gas Pipe Line Corporation.

Before: SILBERMAN, SENTELLE, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Petitioner Panhandle Eastern Pipe Line Company ("Panhandle") transports natural gas through its interstate pipeline system. Motivated by an earlier dispute over its responsibility to build pipeline interconnections ("interconnects") to permit access to its system, Panhandle filed a proposed tariff with the Federal Energy Regulatory Commission (FERC) intended to memorialize the criteria under which it would be willing to construct such interconnects in the future. FERC struck certain provisions of the proposed tariff and mandated that Panhandle adopt modified criteria for pipeline interconnects. *See* 81 F.E.R.C. ¶ 61,295, at 62,393–94 (1997) (denial of rehearing); 79 F.E.R.C. ¶ 61,016, at 61,077–78 (1997). Panhandle petitions for review of FERC's orders.

FERC objected to three provisions in Panhandle's proposed tariff. Those provisions required that a party requesting an interconnect: 1) be a "shipper"; 2) demonstrate the existence of "market demand

commensurate with the facility requested"; and 3) establish that construction of the new interconnect would not result in "adverse economic impact to Panhandle." 79 F.E.R.C. at 61,077. FERC directed Panhandle to delete those requirements and to insert language stating that Panhandle would construct an interconnect for "any party willing to pay the reasonable costs and expenses of the construction and who meets the other conditions of Panhandle's interconnect construction policy as modified by the Commission...." *Id.*

On request for rehearing, Panhandle raised a number of objections to FERC's orders. In particular, it contended that the tariff modifications imposed by the Commission conflicted with or changed established FERC policy. As Panhandle recounted, FERC's policy had been to require a pipeline to build interconnects on a case-by-case basis if, but only if, the Commission found that the pipeline had previously built them for similarly situated parties. *See, e.g., Southwestern Pub. Serv. Co. v. Red River Pipeline,* 63 F.E.R.C. ¶ 61,125, at 61,824, 61,825 (1993) (refusing to require pipeline to construct mid-point tap because requester was "not similarly situated to any other shipper on the system"), *reh'g granted,* 74 F.E.R.C. ¶ 61,133, at 61,475 (1996) (requiring construction after requester met similarly situated standard); *Southwestern Glass Co. v. Arkla Energy Resources,* 62 F.E.R.C. ¶ 61,089, at 61,648 (1993) (refusing to find unduly discriminatory a pipeline's refusal to construct bypass delivery tap because it had treated requester "the same as other similarly situated shippers"); *Arcadian Corp. v. Southern Natural Gas Co.,* 61 F.E.R.C. ¶ 61,183, at 61,679 (1992) ("[T]he Commission's regulations do not directly require an open-access pipeline to construct facilities to provide service ... [except] ... where the pipeline has voluntarily decided to construct facilities for similarly situated customers."), *vacated on other grounds sub nom. Atlanta Gas Light Co. v. FERC,* 140 F.3d 1392, 1404 (11th Cir.1998); *see also Missouri Gas Energy v. Panhandle*

*Eastern Pipe Line Co.,* 75 F.E.R.C. ¶ 61,-166, at 61,550 (1996); *Texas Eastern Transmission Corp.,* 37 F.E.R.C. ¶ 61,260, at 61,683 & n. 114 (1986).

FERC did not dispute Panhandle's description of its established policy. Nor did it attempt to justify its demand that Panhandle delete the proposed interconnect criteria on the ground that they inaccurately reflected the criteria the pipeline utilized in the past. Instead, FERC rejected Panhandle's proposed "market demand" criterion on the ground that it was "unnecessary" to protect the pipeline's interests. 79 F.E.R.C. at 61,077. It directed deletion of the tariff's limitation to shippers in order to ensure that entities such as storage companies and market centers could seek an interconnect. *See id.* And it ordered removal of Panhandle's "adverse economic impact" criterion on the ground that it was "vague," and thus "might" allow Panhandle to deny an interconnect to a future requester that would have received one under the similarly situated standard. *Id.*

Notwithstanding the rationales it gave for its orders, FERC insisted that its directions to Panhandle did not "conflict with or change" its policy of requiring the construction of interconnects only when requesters were similarly situated to parties whose requests had previously been granted. 81 F.E.R.C. at 62,395. There was no conflict or change, the Commission said, because "the subject order does not order an interconnect to be constructed, for similarly situated shippers or otherwise." *Id.; see id.* at 62,396 n. 8, 62,398. Rather than compel Panhandle to construct a specific interconnect, FERC argued, it had merely required Panhandle to modify its tariff language. If and when a future applicant requested an interconnect pursuant to that tariff, "the requesting party [still would have] to meet numerous requirements," including the requirements of the Natural Gas Act. *Id.* at 62,396.

FERC's argument fails to persuade us that it has not changed its policy. Although FERC did not require Panhandle to build any interconnects immediately, it did require Panhandle to adopt tariff language stating that the company would construct an interconnect "for any party willing to pay the reasonable costs and expenses of the construction and who meets the other conditions of Panhandle's interconnect policy as modified by the Commission...." 79 F.E.R.C. at 61,077. At oral argument, FERC's counsel agreed with Panhandle's contention that the pipeline would be required to construct a requested interconnect if the FERC-modified criteria in the new tariff were met, because FERC regulations bind companies to the terms of their tariffs. *See* 18 C.F.R. § 154.3(a). Yet, FERC also agreed that the modified criteria were not based on Panhandle's historical practices. *See also ANR Pipeline Co. v. Transcontinental Gas Pipe Line Corp.,* 84 F.E.R.C. ¶ 61,-106, at 61,534 (1998) (noting that the tariff changes required in Panhandle "were not based on any similarly-situated analysis"). Although it is true that a requester would have to meet "numerous requirements" to qualify for an interconnect, none would necessarily relate to how Panhandle had treated others in the past.

In sum, were we to uphold FERC's orders, Panhandle would be bound to construct an interconnect for any requester falling within its FERC-modified tariff, even if the requester were not similarly situated to any party for whom Panhandle had previously built an interconnect. That constitutes a clear change in FERC's policy. Indeed, in an opinion handed down soon after *Panhandle,* the Commission explained that its order "directing [Panhandle] to modify its tariff provisions involved no Commission policy requiring a similarly-situated analysis to establish undue discrimination." *Id.*

FERC may well be able to defend its new policy. The orders below, however, neither acknowledge the change nor explain its rationale. " 'An agency's view of what is in the public interest may change, either with or without a change in circumstances. But an agency changing its course must supply a reasoned analysis....' " *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 57, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (quoting *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir. 1970)). As we have repeatedly reminded FERC, if it wishes to depart from its prior policies, it must explain the reasons for its departure. *See, e.g., Williston Basin Interstate Pipeline Co. v. FERC,* 165 F.3d 54, 65 (D.C.Cir.1999); *Northeast Energy Assocs. v. FERC,* 158 F.3d 150, 156 (D.C.Cir.1998); *Grace Petroleum Corp. v. FERC,* 815 F.2d 589, 591 (10th Cir.1987).

Accordingly, we grant Panhandle's petition and remand the case to the Commission for an explanation of its reasoning. In light of this disposition, at this juncture we have no occasion to consider Panhandle's other challenges to FERC's orders.