PHARMACHEMIE B.V., Appellee,

v.

BARR LABORATORIES,
INC., Appellant.

Nos. 00–5206 & 00–5207.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 5, 2001.

Decided Jan. 18, 2002.

James F. Hurst argued the cause for appellant. With him on the briefs was Christine J. Siwik.

John F. Cooney argued the cause and filed the brief for appellee.

Before: SENTELLE and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Barr Laboratories, Inc. ("Barr") appeals the district court's grant of summary judgment, interpreting the Hatch–Waxman Amendments of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, and regulations promulgated thereunder, 21 C.F.R. §§ 314.94, 314.107, to Pharmachemie, B.V., a potential competitor of Barr's. Barr contends that the district court erred in vacating an administrative ruling of the Food and Drug Administration ("FDA") that Barr, as the first company to file a paragraph IV certification for tamoxifen, a breast cancer drug, as part of its application for FDA review and approval of its generic version of tamoxifen, had a statutory right to 180 days of generic exclusivity. After the district court granted summary judgment, Pharmachemie lost its court challenge to the underlying patent of the pioneer drug manufacturer's tamoxifen. As a result, Pharmachemie cannot market its generic version of tamoxifen until the patent expires. Because the FDA's ruling no longer causes any redressible harm to Pharmachemie, we conclude that the case is moot and, accordingly, we dismiss the appeal for lack of jurisdiction, vacate the judgment of the district court, and remand the case to the district court with instructions to dismiss the complaint.

## I.

The Hatch–Waxman Amendments simplified the procedure for obtaining approval of generic drugs. *See* Pub. L. No. 98–417, 98 Stat. 1585 (1984). While a pioneer drug manufacturer must file a New Drug Application with safety and effectiveness data, subsequent applicants who want to manufacture generic versions of the original drug need only file an Abbreviated New Drug Application ("ANDA"), which relies on the FDA's previous determination that the drug is safe and effective. *See* 21 U.S.C. §§ 355(a), (j). As relevant here, the Hatch–Waxman Amendments es-

tablish an ANDA certification process that enables generic drug manufacturers to obtain expedited approval of their ANDAs before expiration of the pioneer's patent. *See id.* §§ 355(j)(2)(A)(vii), (5)(b). The ANDA must include a paragraph certification that (I) no patent information has been filed, (II) the patent has expired, (III) the patent will expire on a date certain, or (IV) the patent is invalid or will not be infringed by the drug for which the applicant seeks approval. *See id.* § 355(j)(2)(A)(vii). Relevant here is the paragraph IV certification, which triggers a complex process that potentially allows the ANDA applicant to market its generic drug before the pioneer's patent expires. *See id.* § 355(j)(5)(b). The FDA can approve a paragraph IV certification ANDA immediately unless the patent holder files suit within forty-five days of receiving notice of the paragraph IV certification. *See id.* § 355(j)(5)(B)(iii); 21 C.F.R. § 314.107(f)(2). If a patent infringement action is timely brought, the ANDA can be approved only upon the expiration of a thirty-month period, unless this period is altered by the court or a decision of that court. *See* 21 U.S.C. § 355(j)(5)(B)(iii). As an incentive to the first generic maker to risk costly patent litigation by filing an ANDA with a paragraph IV certification, the Hatch–Waxman Amendments provide that the first to file a paragraph IV certification for a particular drug is eligible for a 180-day period of marketing protection (i.e., exclusivity from competition from subsequent generic drug manufacturers), beginning from the earlier of the first filer's commercial marketing of the drug or a decision of a court holding the patent invalid or not infringed. *See id.* § 355(j)(5)(B)(iv).

In 1985, Barr submitted an ANDA containing a paragraph III certification for the drug tamoxifen, which was patented by Imperial Chemical Industries, PLC ("Im-

perial") under U.S. Patent No. 4,536,516 ("'516 patent"), which is due to expire on August 20, 2002. Barr amended its ANDA in 1987 to a paragraph IV certification, making it the first company to file an ANDA with a paragraph IV certification for tamoxifen. Imperial sued Barr for patent infringement, triggering the thirty-month statutory stay. In 1992, a district court ruled in favor of Barr. *Imperial Chem. Indus., PLC v. Barr Labs.*, 795 F.Supp. 619 (S.D.N.Y.1992), *appeal dismissed and vacated pursuant to settlement sub nom. Imperial Chem. Indus., PLC v. Heumann Pharma GmbH & Co.*, 991 F.2d 811, No. 92–1403, 1993 WL 118931 (Fed.Cir. Mar. 19, 1993) (Table). While Imperial's appeal to the United States Court of Appeals for the Federal Circuit was pending, Imperial and Barr entered into a settlement agreement, in which Imperial licensed Barr to sell its tamoxifen product and Barr agreed not to pursue efforts to obtain final approval of its ANDA prior to the expiration of the '516 patent. As a result of the settlement, on March 19, 1993, the Federal Circuit dismissed Imperial's appeal and vacated the district court's judgment. *Imperial Chem. Indus., PLC v. Heumann Pharma GmbH & Co.*, 991 F.2d 811, No. 92–1403, 1993 WL 118931 (Fed.Cir. Mar. 19, 1993) (Table). Barr subsequently amended its ANDA from a paragraph IV certification to a paragraph III certification, delaying approval of its ANDA until the expiration of the '516 patent.

In 1996, Pharmachemie filed its own ANDA for tamoxifen with a paragraph IV certification, amending its 1994 paragraph III certification ANDA. Zeneca Limited ("Zeneca"), which obtained the patent rights of the '516 patent from Imperial, its former parent company, filed a paragraph IV patent infringement suit against Pharmachemie, triggering the thirty-month statutory stay. *Zeneca Ltd. v. Pharmachemie B.V.* (No. 96–12413). On April 3,

1997, the FDA tentatively approved Pharmachemie's ANDA, to be effective at the earlier of the expiration of the statutory thirty-month stay period (or the period set forth by the court), the date of a final court decision, or the date of the expiration of the patent. On March 2, 1999, the FDA granted Barr's June 26, 1998 petition, which was filed shortly before the thirty-month statutory stay of Pharmachemie's ANDA was to expire and which sought enforcement of Barr's 180-day exclusivity period. The FDA imposed a stay on approval of all other ANDAs for tamoxifen until 180 days after the date of Barr's first commercial marketing of the drug or the date of a final decision of a court holding the '516 patent invalid or not infringed.

Pharmachemie then sought injunctive and declaratory relief in the district court, challenging the FDA's March 2, 1999 decision as contrary to the statute and FDA regulations. Barr intervened. On March 31, 2000, the district court (after consolidating the case with a similar suit brought by Mylan Pharmaceuticals, Inc.) granted summary judgment to Pharmachemie. *Mylan Pharm. Inc. v. Henney*, 94 F.Supp.2d 36 (D.D.C.2000).

Thereafter, two relevant events occurred. First, the FDA did not appeal the district court's decision, but rather, on July 13, 2000, issued an interim rule amending its regulations that interpreted the meaning of "court decision," 21 C.F.R. §§ 314.107(e)(1)-(2)(iii), on which it had relied in granting Barr's petition. *Court Decisions, ANDA Approvals, and 180–Day Exclusivity*, 65 Fed. Reg. 43,233, 43,-233 (2000). In view of recent judicial decisions, the FDA defined a "decision of a court" to include a district court opinion regardless of whether that opinion is appealed. *Id.* at 43,234. This rule is prospective only. *FDA, Guidance for Industry, Court Decisions, ANDA Approvals,*

*and 180–Day Exclusivity Under the Hatch–Waxman Amendments to the Federal Food, Drug, and Cosmetic Act* 4 (2000). Second, Pharmachemie lost its patent suit against Zeneca, and the district court in that case ordered that Pharmachemie's ANDA would become effective no earlier than the expiration of the '516 patent. *Zeneca Ltd. v. Pharmachemie, B.V.,* Order (Oct. 27, 2000).

## II.

Pharmachemie contends that the case is moot on appeal because it can no longer obtain the relief it sought in its complaint in light of the adverse final judgment on the validity of the patent. Barr responds that the appeal is not moot because the district court's decision stripping Barr of its statutory right to generic exclusivity continues to harm Barr. Alternatively, pointing to *Teva Pharmaceuticals, USA, Inc. v. FDA,* No. 99–5287, 2000 WL 1838303, at *1 (D.C.Cir. Nov. 15, 2000), Barr contends that the issues on appeal are capable of repetition, yet evade review because there are only 180 days in which to obtain judicial review of challenges to the statutory exclusivity period.

█ The mootness doctrine limits Article III courts to deciding "actual, ongoing controversies." *Clarke v. United States,* 915 F.2d 699, 700–01 (D.C.Cir.1990) (quoting *Honig v. Doe,* 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). A case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Id.* at 701 (quoting *Transwestern Pipeline Co. v. FERC,* 897 F.2d 570, 575 (D.C.Cir.1990)); *accord Pub. Util. Comm'n of the St. of Cal. v. FERC,* 236 F.3d 708, 714 (D.C.Cir.2001). Thus, "Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and con-

fines them to resolving real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (quoting *N.C. v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)) (internal quotation marks omitted).

█ The district court in *Zeneca Ltd.* ruled in favor of the patent holder Zeneca, rejecting Pharmachemie's challenges to the '516 patent and ordering that the effective date of Pharmachemie's ANDA be no earlier than the expiration of the '516 patent. Pharmachemie did not appeal, and the judgment upholding the patent became final. Pharmachemie also amended its ANDA, changing the patent certification from paragraph IV to III, delaying approval of its ANDA until the expiration of the '516 patent. In view of the final judgment upholding the '516 patent, Pharmachemie no longer suffers a redressible harm in this case. Whether it wins or loses on appeal, it will be prevented from marketing its generic drug before the patent expires—thus, making the case moot on appeal. *Cf. In re Highway Truck Drivers & Helpers Local Union #107,* 888 F.2d 293, 297–98 (3d Cir.1989); *In re Cantwell,* 639 F.2d 1050, 1054 (3d Cir.1981). To the extent Pharmachemie's failure to appeal the judgment upholding the '516 patent constitutes voluntary action bringing about mootness, "a court may conclude that voluntary cessation has rendered a case moot if the party urging mootness demonstrates that (1) 'there is no reasonable expectation that the alleged violation will recur,' and (2) 'interim relief or events have completely or irrevocably eradicated the effects of the alleged violations.'" *Nat'l Black Police Ass'n v. D.C.,* 108 F.3d 346, 349

(D.C.Cir.1997) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). Pharmachemie meets this test because it is precluded from further challenging Barr's 180-day exclusivity period by the judgment upholding the '516 patent; again, Pharmachemie no longer suffers a redressible harm in this case, and Pharmachemie would have no standing to make a future challenge. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Barr's contentions that the case is not moot on appeal are unpersuasive. First, as between Pharmachemie and Barr, the value of Barr's exclusivity has no potential of being harmed because Pharmachemie is precluded from marketing tamoxifen before the expiration of the '516 patent. Contrary to Barr's suggestion, the instant appeal does not present the issue whether the 180-day exclusivity period extends beyond the expiration of the patent. This issue was neither addressed in the FDA's decision nor raised in Pharmachemie's complaint in the district court. The issue in the instant appeal as to the trigger of the 180-day exclusivity period is limited to whether any court decision is sufficient to trigger § 355(j)(5)(B)(iv)(II)'s court-decision trigger. The court is therefore not called upon to decide whether the exclusivity period extends beyond the expiration of the patent. In addition, the risk that *other* drug manufacturers might intrude upon the value of Barr's 180-day exclusivity as to tamoxifen is unrelated to the present controversy, and to rule here, in an effort to avoid that risk is precisely the type of advisory decision-making that Article III courts are constitutionally required to avoid.

Second, fatal to most of Barr's contentions, including that the district court decision guts its marketing strategy of challenging suspect drug patents under the Hatch–Waxman Amendments, is the fact that an adverse decision in the district court is insufficient to create a case or controversy on appeal. *City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), on which Barr relies, is distinguishable; in that case, the case was not moot, in part, because of the harm to the losing party that would result from the unvacated decision below, which the Supreme Court could not vacate due to federalism concerns. *Id.* at 288, 120 S.Ct. at 1390–91; *see also id.* at 305, 120 S.Ct. at 1399–400 (Scalia, J., concurring in the judgment). There is no similar risk here because the appropriate procedure upon concluding that this case is moot is to vacate the district court decision. *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39 & n. 2, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Columbian Rope Co. v. West,* 142 F.3d 1313, 1317–18 & n. 5 (D.C.Cir.1998). Vacatur of the district court decision will have no future adverse effect on Barr's marketing strategy. Moreover, to conclude that the instant case is not moot solely because of the district court's adverse judgment would create a case or controversy with only one interested party. *City of Erie,* 529 U.S. at 307, 120 S.Ct. at 1400–01 (Scalia, J., concurring in the judgment). Any implication that the court should now rule on Barr's contentions on the merits because of the possibility that an adverse decision in the district court will remain is, again, a request for an advisory opinion as to other potential cases, with no effect on the present parties.

Finally, Barr's contention that the issues raised are capable of repetition, yet evading review fails to recognize the limits of this exception to the mootness doctrine. The Supreme Court set forth the familiar test for the "capable of repetition, yet evading review" exception to the

mootness doctrine in *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975):

> [I]n the absence of a class action, the "capable of repetition, yet evading review" doctrine [is] limited to the situation where two elements combine[ ]: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

*Id.* at 149, 96 S.Ct. at 348–49. Barr has failed to demonstrate that the present issues satisfy both prongs of this narrow exception. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

Under the evading review prong, the question is whether "the challenged activity is *by its very nature short in duration,* so that it could not, or probably would not, be able to be adjudicated while fully live." *LaRouche v. Fowler,* 152 F.3d 974, 978 (D.C.Cir.1998) (quoting *Conyers v. Reagan,* 765 F.2d 1124, 1128 (D.C.Cir.1985)) (internal quotation marks omitted). Barr contends that judicial review is limited by the duration of the 180-day exclusivity period. Yet it is not the 180-day limit on exclusivity that has mooted the instant case, but rather the outcome of Pharmachemie's patent suit. The court need not resolve whether this intervening cause of mootness makes irrelevant Barr's contentions that the 180-day period inherently evades review, however, because Barr must still meet the second prong for this exception to apply, and it cannot.

Under the capable of repetition prong, there must be a "reasonable expectation that the *same complaining party* would be subjected to the *same action* again." *Weinstein,* 423 U.S. at 149, 96 S.Ct. at 348–49 (emphasis added); *see also Liu v. INS,* 274 F.3d 533 (D.C.Cir.2001). This prong requires that the same parties will engage in litigation over the same issues in the future. *Norman v. Reed,* 502 U.S. 279, 288, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992); *Burlington N. R.R. Co. v. Bhd. of Maint. of Way Employes,* 481 U.S. 429, 436 n. 4, 107 S.Ct. 1841, 95 L.Ed.2d 381 (1987); *Cruz v. Farquharson,* 252 F.3d 530, 534 (1st Cir.2001); *Columbian Rope,* 142 F.3d at 1317; *Meyers v. Jay St. Connecting R.R.,* 288 F.2d 356, 359 (2d Cir. 1961). As the Second, Seventh, and Ninth Circuits have explicitly held, relying on constitutional grounds, "there must be a reasonable degree of likelihood that th[e] issue will be the basis of a continuing controversy between these two parties" in "order to ensure the existence of an ongoing controversy." *Cent. Soya Co. v. Consol. Rail Corp.,* 614 F.2d 684, 689 (7th Cir.1980); *accord Video Tutorial Servs., Inc. v. MCI Telecomms. Corp.,* 79 F.3d 3, 6 (2d Cir.1996); *Lee v. Schmidt–Wenzel,* 766 F.2d 1387, 1390 (9th Cir.1985) (quoting 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533, at 291–92 (1975)).

Unlike *Teva,* the FDA is no longer a party in the instant case; the only parties on appeal are Barr and Pharmachemie. For this case to be grounded in a live case or controversy, the only question is what is the likelihood that Barr and Pharmachemie will engage in this same litigation. Barr has not contended that it and Pharmachemie are frequent rival litigants. But assuming that Barr and Pharmachemie may again be rival ANDA applicants, several contingencies would have to occur for the same issues to arise again: (1) Barr must be the first to have filed an ANDA for a particular drug with a paragraph IV certification; (2) Pharmachemie must later file an ANDA with a paragraph IV certification for the same drug; and (3) there must be some basis for a dispute as to the exclusivity period because, for example,

Barr wins a judgment invalidating the patent and the judgment is vacated, or Pharmachemie is able to market its generic version while an appeal of Barr's judgment invalidating the patent is pending, or Barr voluntarily converts its paragraph IV certification to a paragraph III certification. While the combination of all of these contingencies is possible, Barr has not demonstrated a reasonable likelihood that they will occur. *See James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1136 (D.C.Cir.1987); *Bois v. Marsh*, 801 F.2d 462, 466–67 (D.C.Cir.1986).

Because the issues are moot on appeal, vacatur of the district court decision granting summary judgment to Pharmachemie is appropriate. Where happenstance has made a matter moot, the standard practice is to vacate the decision of the district court. *Columbian Rope*, 142 F.3d at 1317. The exception that is applied when mootness results from voluntary action of a party, *see Nat'l Black Police Ass'n*, 108 F.3d at 351, is inappropriate here because Pharmachemie, the only party to whose actions mootness could be attributed, prevailed in the district court. *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Although, generally, when the court declines review of an agency order on the ground of intervening mootness as a result of happenstance, vacatur of the agency order is appropriate, *Columbian Rope*, 142 F.3d at 1318 & n. 5; *see also A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 329, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961); *Am. Family Life Assurance Co. of Columbus v. FCC*, 129 F.3d 625, 630 (D.C.Cir.1997), we do not vacate FDA's ruling; Pharmachemie did not request such vacatur and its failure to appeal the judgment upholding the patent constituted voluntary action that led to the mootness of the instant case, *see Nat'l Black Police Ass'n*, 108 F.3d at 351. Accordingly, we dismiss the appeal as moot,

vacate the judgment of the district court, and remand the case to the district court with instructions to dismiss the complaint.