The FUND FOR ANIMALS
et al., Plaintiffs,

v.

Steven WILLIAMS et al., Defendants.

No. CIV.A.01–2078(RMU).

United States District Court,
District of Columbia.

Feb. 3, 2004.

2

Jonathan Russell Lovvorn, Meyer & Glitzenstein, Washington, DC, for Plaintiffs.

Lori Caramanian, U.S. Department of Justice, Denver, CO, Mauricia Maria Magdalena Baca, U.S. Department of Justice, Washington, DC, for Defendants.

### MEMORANDUM OPINION

GRANTING THE DEFENDANTS' MOTION TO ALTER OR AMEND THE COURT'S JUDGMENT

URBINA, District Judge.

### I. INTRODUCTION

This matter comes before the court on the defendants' motion to alter or amend the court's judgment pursuant to Federal Rule of Civil Procedure 59(e). The plaintiffs are the Fund for Animals, the Biodiversity Legal Foundation, the Utah Environmental Congress, the Humane Society of the United States, and two wildlife enthusiasts (collectively, "the plaintiffs"). They brought suit against the Fish and Wildlife Service ("the Service") and the Department of the Interior (collectively, "the defendants") claiming, *inter alia,* that the defendants violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.,* by failing to adequately explain the Service's refusal to list the Tri–State Trumpeter swan on an emergency basis as an endangered or threatened species. After the court granted summary judgment to the plaintiffs on the ESA claim, the defendants filed the pending motion on the grounds that the ESA claim became moot during the pendency of the action. Because interim events have rendered the plaintiffs' ESA claim moot, the court grants the defendants' motion and alters its judgment accordingly.

### II. BACKGROUND [1]

The Trumpeter swan (*Cygnus buccinator*) is the largest native waterfowl in North America, and one of the rarest North American waterfowl species. *Fund for Animals v. Williams,* 246 F.Supp.2d 27, 29 (D.D.C.2003). Eliminated from 99 percent of its historic range by mid-century, the only remaining indigenous wild breeding Trumpeter swan population in the contiguous United States today consists of a mostly non-migratory population in the Greater Yellowstone area of Idaho, Montana, and Wyoming (the "Tri–State" area). *Id.* Because the population does not migrate, and therefore is vulnerable to mass starvation during the severe Tri–State winters, concerns grew about the population's future existence. *Id.* To promote migration of the Tri–State flock to more suitable winter habitats, the Service began to disperse the swans through hazing and translocation programs. *Id.* at 30. As the Service implemented these programs, some of the displaced Trumpeter swans were brought into contact with Tundra swan hunting areas, where they were mistaken for Tundra swans (*Cygnus columbianus*) and killed. *Id.* To reconcile Tundra swan hunting interests with Trumpeter swan restoration efforts, the Service restructured the swan hunting season to include both Tundra and Trumpeter swans while curtailing the hunting areas and shortening the hunting season. *Id.* at 30–31.

In response, two of the plaintiffs petitioned the Service to list, on both an emergency and a non-emergency basis, the Tri–State Trumpeter swan population as "endangered" or "threatened" under ESA. *Id.* at 31. The Service responded to the emergency listing petition with a two-page letter concluding that there was no compel-

---

1. For a more detailed factual background, see *Fund for Animals v. Williams,* 246 F.Supp.2d 27, 29–32 (D.D.C.2003).

ling reason to implement an emergency listing of the Tri–State Trumpeter swan population. *Id.* at 36. The letter stated that "[t]he birds included in your petition are not recognized by the Service as a population but are part of the Rocky Mountain Population (RMP) of Trumpeter swans," and observed that the RMP Trumpeters had increased steadily in number for at least three decades. *Id.* It went on to indicate that it would issue its finding (known as a "90–day finding") on the non-emergency listing petition as quickly as possible. *Id.* at 31. More than two years later, the Service formally published its 90–day finding, concluding that the Tri–State Trumpeters are not a "distinct population segment" and setting forth the analysis supporting its conclusion. *Id.* at 32; 68 Fed.Reg. 4,221–28 (Jan. 28, 2003).

After receiving the Service's letter but before the Service issued its 90–day finding, the plaintiffs filed suit in this court alleging, *inter alia,* that the defendants had violated ESA. *Fund for Animals,* 246 F.Supp.2d at 32. In granting summary judgment to the plaintiffs on their ESA claim, the court determined that the Service's denial of the emergency listing petition was arbitrary and capricious because the defendants did not adequately explain their denial. *Id.* at 37. Specifically, the court held that

> [the defendants'] explanation almost, but not quite, provides an "adequate explanation" of the defendants' result .... It does allow the court to reasonably discern most of the agency's logic in concluding, based on data regarding the number of RMP swans and the number of Tri–State swans, that emergency list-

ing was not warranted .... But it misses the crucial first step: it provides not even a cursory explanation as to why the Service does not recognize the Tri–State swans as a population separate from the RMP swans—the heart of the plaintiffs' petition.

*Id.* at 36. The court then remanded the letter to the Service to provide "an adequate explanation by indicating its reasons for its non-recognition of Tri–State Trumpeter swans as a distinct population." *Id.* at 37.

Subsequently, the defendants filed the pending motion to alter or amend judgment, alleging that the Service's issuance of the 90–day finding mooted the plaintiffs' ESA claim.[2] The court now addresses to that motion.

## III. ANALYSIS

### A. Legal Standards

#### 1. Rule 59(e) Motion to Alter or Amend Judgment

Under Rule 59(e), a party may file a motion to alter or amend the court's judgment within 10 days of entry of the judgment at issue. FED. R. CIV. P. 59(e); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1098 (D.C.Cir.2003) (discussing the measurement of the 10–day period). While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an unusual measure. *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir. 1996) (*per curiam*); *McDowell v. Calderon,* 197 F.3d 1253, 1255 (9th Cir.1999). Rule 59(e) motions "need not be granted unless the district court finds that there is

---

**2.** The defendants filed their motion within the time period prescribed by Rule 59(e). FED R. CIV. P. 59(e); *Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1098 (D.C.Cir.2003) (stating that a Rule 59(e) motion "must be filed within 10 days of the challenged order, not including weekends, certain specified national holidays (including Christmas Day and New Year's Day), or any other day appointed as a holiday by the President'').

an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Firestone*, 76 F.3d at 1208 (citations omitted). Moreover, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F.Supp. 37, 38 (D.D.C.1995), or a vehicle for presenting theories or arguments that could have been raised previously. *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C.Cir.1993); *W.C., A.N. Miller Cos.*, 173 F.R.D. 1, 3 (D.D.C.1997).

## 2. Mootness

 Article III, section 2 of the Constitution limits federal courts to deciding "actual, ongoing controversies." [3] *21st Century Telesis Joint Venture v. Fed. Communications Comm'n*, 318 F.3d 192, 198 (D.C.Cir.2003) (citing *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). Furthermore, the Supreme Court has held that Article III's case-or-controversy requirement prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or abstract issues. *Flast v. Cohen*, 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). "The doctrine of mootness is a logical corollary of the case or controversy requirement[.]" *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90 (D.C.Cir.1986). In cases where challenged conduct ceases and "there is no reasonable expectation that the wrong will be repeated, . . . it becomes impossible for the court to grant any effec-

tual relief whatever to the prevailing party, and any opinion as to the legality of the challenged action would be advisory." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). Accordingly, a court may not rule on the merits of a case in which the claim for relief is moot.

 Courts must evaluate mootness "through all stages" of the litigation in order to ensure that a live controversy remains. *21st Century*, 318 F.3d at 198 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) and *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). As a result, "[e]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C.Cir.1990)).

 A case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *City of Erie*, 529 U.S. at 287, 120 S.Ct. 1382 (internal quotations omitted). An intervening event may render a claim moot if (1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations. *Pharmachemie*

---

3. The case-or-controversy requirement was "presumably designed to ensure that the unrepresentative branch would not function in a manner identical to that of the representative branches." JEROME A. BARRON, Constitutional Law: Principles and Policy Cases and Materials § 11.02[A] at 1443. By confining the judiciary's operation to the adjudication of live, adversarial disputes capable of being resolved

and whose resolution may be enforced, Article III ensures that the judicial branch will neither be able to initiate or enact wholly generalized legislative edicts, nor carry out the day-to-day executive or administrative tasks of government. *Id.* Article III thus allows for the judiciary to perform its essential political role in a manner unique among the branches. *Id.*

*B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C.Cir.2002); *Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C.Cir.1992). A case is not moot, however, so long as any single claim for relief remains viable, as the remaining live issues satisfy the case-or-controversy requirement. *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 978 (D.C.Cir.1991) (internal quotations and citations omitted). The burden of establishing mootness rests on the party raising the issue, and it is a heavy burden. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 458–59 (D.C.Cir.1998).

## B. The Court Grants the Defendants' Motion to Alter or Amend Judgment

 The defendants contend that the plaintiffs' challenge to the emergency listing decision was rendered moot in January 2003, when the Service published its 90–day finding explaining why the Tri–State Area flock of Trumpeter swans does not constitute a distinct population segment. Defs.' Mot. to Alter or Amend J. ("Defs.' Mot.") at 2, 6. The defendants note that the 90–day finding explains that the Service reached its conclusion by analyzing (1) the population segment's discreetness from the remainder of the taxon and (2) its significance to the taxon to which it belongs.[4] *Id.* at 5. According to the defendants, "[t]he analysis set forth in the 90–Day finding addresses the need for remand for [an] 'adequate explanation' that was identified by the Court, and satisfies the relief requested by Plaintiffs." *Id.* at 6. The defendants argue that as a result,

the 90–day finding rendered the plaintiffs' ESA claim moot and deprived the court of jurisdiction over that claim. *Id.* at 2, 7–8.

The plaintiffs disagree. First, the plaintiffs stress that although the Service's 90–day finding addressed "related issues," it did not purport to supersede or otherwise replace the Service's emergency listing decision. Pls.' Opp'n at 3–4, 6–8. Second, the plaintiffs point out that the 90–day finding was not part of the administrative record for the emergency listing decision. *Id.* at 9. As a result, the plaintiffs contend that the court could not consider the 90–day finding in determining whether the emergency listing decision was arbitrary and capricious. *Id.* at 9–10. Finally, the plaintiffs assert that the defendants' reliance on the 90–day finding is a post-hoc effort to shore up the emergency listing decision. *Id.* at 10.

The court notes that the plaintiffs do not claim that the defendants' alleged violation will recur. *See generally* Compl.; Pls.' Opp'n. Thus, the sole issue before the court is whether the 90–day finding "completely and irrevocably eradicated the effects of the alleged violation." *Pharmachemie*, 276 F.3d at 631; *Sellers*, 959 F.2d at 310. Because the court concludes that it did, the plaintiffs' ESA claim became moot during the pendency of the action, and the court alters its judgment accordingly. *Id.*; Fed. R. Civ. P. 59(e); *Firestone*, 76 F.3d at 1208.

The relief sought by the plaintiffs was a court order directing the Service "to address the merits of plaintiffs' petition for emergency listing of the [Tri–State Trumpeters], and to provide a coherent statement of reasons for the Service's decision."[5] Compl. at 36–37. The court found that the Service had provided an adequate

---

4. Taxonomy is the "orderly classification of plants and animals according to their presumed natural relationships." Merriam-Webster's Collegiate Dictionary 1208 (10th

ed.1990). A taxon is "a taxonomic group or entity." *Id.*

5. The court is startled by the plaintiffs' contention that

explanation for its decision with one exception: the Service failed to explain its reasons for declining to recognize the Tri–State Trumpeter swans as a distinct population segment. *Fund for Animals*, 246 F.Supp.2d at 36. The 90–day finding does just that. 68 Fed.Reg. 4,221–28. First, the finding analyzes the discreetness of the Tri–State Trumpeter swans, considering at some length whether the population is "markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors" or "delimited by international governmental boundaries within which differences in control of exploitation, management of habitat, conservation status, or regulatory mechanisms exist that are significant with regard to conservation of the taxon." *Id.* at 4,223–26. Second, the 90–day finding examines the Tri–State Trumpeters' significance to its taxon, weighing:

> [the p]ersistence of the discrete population segment in an ecological setting unusual or unique for the taxon; [ ] evidence that the discrete population

segment differs markedly from other population segments in its genetic characteristics; [ ] evidence that the discrete population segment represents the only surviving natural occurrence of a taxon that may be more abundant elsewhere as an introduced population outside its historic range; and [ ] evidence that loss of the discrete population segment would result in a significant gap in the range of the taxon.

*Id.* at 4,226–27. Pursuant to this two-pronged analysis, the 90–day finding concludes that "the Tri–State Area flock of trumpeter swans does not constitute a [distinct population segment] in the meaning of [ESA] and, therefore, is not a listable entity." *Id.* at 4,228. Rather than merely focusing on "related issues," the 90–day finding's analysis directly addresses the plaintiffs' relief by providing the requested "coherent statement of reasons"—including the "explanation as to why the Service does not recognize the Tri–State swans as a population separate from the RMP swans"—for the Service's listing decision.[6] *See generally id.*; *Fund*

---

the Court's remand order also plainly provides plaintiffs with additional 'relief,' including, among other things, an opportunity to present new information to be considered along with the new 90–day finding information the Service wishes to rely on, to ensure that the Service seriously and lawfully considers plaintiffs' request for emergency listing based 'solely on the basis of the best scientific and commercial data available, 16 U.S.C. § 1533(b)(1)(A), and to ensure the agency makes a clear, judicially reviewable record of the Service's reasons for granting or denying the requested emergency listing action—including a 'reasoned explanation' of whether and why the Service is making a 'change in course' from its longstanding treatment of the Tri–State Trumpeter Swan population as a distinct Trumpeter Swan population.

Pls.' Opp'n at 13 (citing *Fund for Animals*, 246 F.Supp.2d at 37 n. 10; *Panhandle Eastern Pipe Line Co. v. Fed. Energy Regulatory*

*Comm'n*, 196 F.3d 1273, 1275 (D.C.Cir.1999); *Jost v. Surface Transp. Bd.*, 194 F.3d 79, 85 (D.C.Cir.1999)). The court, however, said no such thing. *See* Order dated Feb. 25, 2003 (stating simply that "the defendants shall provide an adequate explanation of the Service's denial of the plaintiffs' emergency listing petition within 60 days of the date of this order"); *Fund for Animals*, 246 F.Supp.2d at 37 n. 10 (indicating that "if the defendants' position does represent a change in course, their explanation must include 'a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored' "). By misstating the record once again, the plaintiffs do themselves, the defendants, and this court a disservice. *See, e.g.*, *Fund for Animals*, 246 F.Supp.2d at 32 n. 7 (noting that the plaintiffs' statement of material facts contained misstatements of the record).

**6.** The plaintiffs complain that the 90–day finding failed to "dispute the critically imperiled

*for Animals,* 246 F.Supp.2d at 36; Pls.' Opp'n at 7; Compl. at 37. Accordingly, before the court issued its judgment, the plaintiffs "obtained everything that they could recover ... by a judgment of this court in their favor." *Better Gov't,* 780 F.2d at 91.

The plaintiffs argue that the 90–day finding does not purport to supersede the emergency listing decision and thus that their ESA claim is not moot. Pls.' Opp'n at 3–4, 6–8. But the plaintiffs misread the case law. It is the effect, not the superseding nature, of the subsequent action that matters. *E.g., Pharmachemie,* 276 F.3d at 631 (stating that the "interim relief or events [must] have completely and irrevocably eradicated the *effects* of the alleged violations" (emphasis added)). Here, the effect of the 90–day finding was to provide the plaintiffs with the relief at issue: a coherent statement of reasons for the Service's conclusion that the Tri–State Trumpeter swans are not a distinct population segment. 68 Fed.Reg. 4,221–28. The 90–day finding therefore renders the plaintiffs' ESA claim moot. *Cf. Am. Historical Ass'n v. Peterson,* 876 F.Supp. 1300, 1310–11 (D.D.C.1995) (finding that letters of intent signed by the Archivist subsequent to an agreement between the Archivist and former President Bush did not moot the plaintiffs' claim because the letters did not provide the relief of preventing the president from disregarding the Presidential Records Act); *Nat'l Treasury Employees Union v. Newman,* 768 F.Supp. 8, 12 (D.D.C.1991) (concluding

that the Office of Personnel Management's ("OPM") notice on new examination procedures that OPM issued after it had promulgated the new procedures did not moot the plaintiff's claim because the notice did not provide the relief of ensuring notice and opportunity for comment prior to promulgation). As for the plaintiffs' contention that the 90–day finding is not part of the administrative record, this fact is not relevant to the mootness analysis because "[b]y definition, mootness concerns events occurring after the alleged violation." *S. Utah Wilderness Alliance v. Smith,* 110 F.3d 724, 729 (10th Cir.1997).

In sum, the court concludes that the 90–day finding "completely and irrevocably eradicated the effects of the alleged violation," thereby mooting the plaintiffs' ESA claim and depriving this court of jurisdiction over that claim. *Pharmachemie,* 276 F.3d at 631; *Sellers,* 959 F.2d at 310. The court therefore alters its judgment accordingly. FED. R. CIV. P. 59(e); *Firestone,* 76 F.3d at 1208.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to alter or amend its judgment with regard to the plaintiffs' ESA claim. In all other respects, the court's judgment stands. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of February, 2004.

status of the 400 or so remaining adult Tri–State Trumpeter Swans" and that its conclusions "conflict[ ] with nearly twenty years of previous Service literature and reports demonstrating that the Tri–State Trumpeter Swan population is not only a 'population,' but is a 'significant' 'important' and 'distinct entity' from the large Canadian-nesting Trumpeter

Swan population." Pls.' Opp'n at 3. The question, however, is not whether the defendants agreed with the plaintiffs' views, but whether they provided "an adequate explanation [of the] reasons for [the Service's] nonrecognition of Tri–State Trumpeter swans as a distinct population." *Fund for Animals,* 246 F.Supp.2d at 37; Compl. at 36–37.

## *ORDER*

### GRANTING THE DEFENDANTS' MOTION TO ALTER OR AMEND THE COURT'S JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 3rd day of February, 2004, it is

**ORDERED** that the defendants' motion [# 41] to alter or amend the court's judgment with regard to the plaintiffs' Endangered Species Act claim is **GRANTED**. In all other respects, the court's judgment stands.

**SO ORDERED.**