HAWAII LONGLINE ASSOCIATION,
Plaintiff,

v.

NATIONAL MARINE FISHERIES
SERVICE, and Donald L. Evans, In
his official capacity as Secretary,
United States Department of Commerce Defendants.

No. CIV.01–0765(CKK).

United States District Court,
District of Columbia.

Oct. 6, 2003.

Jeffrey W. Leppo, Stoel Rives LLP, Seattle, WA, for Plaintiff.

Adam D. Issenberg, U.S. Dept. of Justice, Environmental & Natural Resources Div., Washington, DC, for Defendants.

Setphen E. Roady, Earthjustice, Washington, DC, Paul H. Achitoff, Earthjustice, Honolulu, HI, for Defendant Intervenors.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

This is the second time that the Court must rule on a motion to reconsider judgment in this protracted Administrative Procedure Act litigation. In actuality, the Court must entertain two motions to reconsider judgment: the first filed by Plaintiff Hawaii Longline Association ("HLA") and the second filed by Defendants National Marine Fisheries Service ("NMFS") and Secretary Donald L. Evans. At first blush, the parties' motions do not appear to differ in any material respect: They both request that the Court put into place an interim regime pending NMFS's completion of a new biological opinion and, if required by this newly issued biological opinion, the promulgation of new regulations amending the Pelagics Fishery Management Plan ("Pelagics FMP") at issue in this case. Nonetheless, despite their superficial consistencies, the parties' motions differ drastically as to how they propose that the Court should implement this interim regime. Moreover, these very real differences would result in divergent presumptions as to the legitimacy of the previously vacated actions taken by NMFS. After reviewing Plaintiff's and Defendants' Motions,[1] their Responses, their Replies,[2] and the applicable law, the Court shall grant Plaintiff's Motion to Reconsider in part and deny in part; the Court shall deny Defendants' Motion to Reconsider.

## I. INTRODUCTION [3]

### A. *The Court's August 31, 2003, Memorandum Opinion.*

In its August 31, 2003, Memorandum Opinion and accompanying Order, the Court held unlawful a biological opinion issued by NMFS. *HLA v. NMFS*, Civ. No. 01–765, slip op. at 51–62, 281 F.Supp.2d 1 (D.D.C. Aug. 31, 2003) (memorandum opinion) [hereinafter Aug. 31, 2003, Op.]. The biological opinion—as contemplated in the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et. seq.*—considered the effects that the Hawaii longline fishing in-

---

1. The Court also received and considered filings submitted by two environmental conservation groups, both of whom had previously joined this litigation as Defendant-Intervenors.

2. Plaintiff has moved for leave to file a surreply. The Court will grant Plaintiff's unopposed motion and has considered its Surreply in resolving the matter presently before the Court.

3. Due to the complicated nature of this case and the substantial record that has been generated up until this point, the Court will only recount the most pertinent issues leading up to the present motions. For a complete account of the events in this litigation, see *HLA v. NMFS*, Civ. No. 01–765, slip op. at 1–35 (D.D.C. Aug. 31, 2003) (memorandum opinion).

dustry ("Fishery") had on endangered and threatened sea turtles that inhabit the Pacific Ocean. *Id.* at 26–32. The Court also held unlawful regulations promulgated by NMFS amending the Pelagics FMP. *Id.* at 37–51. The unlawful regulations formally implemented the reasonable and prudent alternative ("RPA") of a prior biological opinion, which the Court had also invalidated under arbitrary and capricious review. *Id.* at 21–25. After vacating these agency actions, the Court remanded these matters to NMFS for actions consistent with the Court's Memorandum Opinion and Order. *Id.* at 62–63. The Court concluded by noting:

> "[U]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *County of Los Angeles v. Shalala,* 192 F.3d 1005, 1011 (D.C.Cir.1999) (quoting *PPG Indus., Inc. v. United States,* 52 F.3d 363, 365 (D.C.Cir.1995)). Accordingly, it is up to the agency to determine how to proceed next—not for the Court to decide or monitor. *See id.* What is clear, however, is that the 2001 BiOp, the June 2002 Regulations, and the 2002 BiOp have all been vacated and remanded to NMFS.

*Id.* (alternation in original).

**B. *Filing of the Present Motions to Reconsider.***

Shortly after taking the steps listed above, on September 10, 2003, the Court received an "emergency" motion to reconsider, filed by Plaintiff. *See generally* Pl.'s Emergency Mot. for Reconsideration and for Temporary Stay ("Pl.'s Mot. to Reconsider"). Two days later, on September 12, 2003, the Court received Defendants' Combined Memorandum in Support of Their Motion for Reconsideration and in Response to Plaintiff's Emergency Motion for Reconsideration and for Temporary Stay ("Defs.' Mot. to Reconsider"). The Court's docket was also peppered with filings by Defendant–Intervenors, two conservation groups permitted to intervene in the later stages of this case. *See generally* Turtle Island Restoration Network and the Ocean Conservancy's Response to HLA' Mot. for Reconsideration ("Def.-Intervenors.' Response"); Def.-Intervenors Turtle Island Restoration Network and the Ocean Conservancy's Joinder in Defendants' Mot. for Reconsideration ("Def.-Intervenors.' Joinder of Defs.' Mot. to Reconsider").

According to all of the parties to this litigation, following the Court's August 31, 2003, Memorandum Opinion, NMFS determined that there was no applicable biological opinion governing the activities of the Fishery. Pl.'s Mot. to Reconsider at 1–4; Defs.' Mot. to Reconsider at 2–4; Def.-Intervenors' Response at 1–2. The absence of a valid biological opinion led to a peculiar result: The Fishery, while technically not subject to the regulations that it had successfully moved this Court to invalidate, did not enjoy the benefit of the Incidental Take Statement ("ITS") that accompanies a valid biological opinion. An ITS can be analogized to a permit; in this case, an ITS literally permits the Fishery to take (harm, kill, or harass) listed turtles without violating Section 9 of the ESA. As the Supreme Court noted in *Bennett v. Spear,* "any person" acting outside the confines of the biological opinion's ITS could be "subject to substantial civil and criminal penalties, including imprisonment." *See Bennett v. Spear,* 520 U.S. 154, 170, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Therefore, although Plaintiff prevailed in its initial efforts to set aside the regulations, without the vacated biological opinion's ITS, members of the Fishery

cannot drop a single hook out of fear that it may lead to civil or criminal sanctions—even imprisonment—under the ESA.

### C. Distinguishing the Present Motions to Reconsider.

As the Court has already indicated above, a review of the parties' filings reveals that there is a general consensus that an interim regime should be put into place. Pl.'s Mot. to Reconsider at 2; Defs.' Mot. to Reconsider at 2; Def.-Intervenors' Response at 1. However, as the Court has also explained, the parties differ as to how the Court should effectuate this interim regime. *See, e.g.,* Defs.' Mot. to Reconsider at 2 ("Defendants concur with HLA that immediate relief is necessary but disagree as to the nature of the relief that should be granted.") (footnote omitted). Therefore, it is necessary to briefly consider the substance and form of Plaintiff's and Defendants' motions to reconsider.

### 1. Defendants' Motion to Reconsider.

Defendants NMFS and Secretary Evans ask the Court to take two steps: first, they argue that the Court should reconsider its judgment under Federal Rule of Civil Procedure 59(e); second, they ask that the Court reconsider its decision to vacate—not remand—the contested biological opinion and regulations. *See* Defs.' Mot. to Reconsider at 4–6. In essence, Defendants contend that the Court has the authority to remand the unlawful biological opinion and regulations without vacating them—leaving regulations in place, but at the same time requiring the agency to take steps to remedy their deficiencies. *See id.* at 6–8.

### 2. Plaintiff's Motion to Reconsider.

Plaintiff HLA advances a slightly different approach that can also be distilled to two principal steps: first, Plaintiff asks that the Court reconsider its judgment under Federal Rule of Civil Procedure 59(e); second, it asks that the Court reconsider its decision not to stay the mandate. *See* Pl.'s Mot. to Reconsider at 4. In other words, Plaintiff contends that the Court properly vacated and remanded the unlawful biological opinion and regulations to the agency, but it should have issued a stay of the vacatur with its August 31, 2003, Order, effectively leaving the old regulatory state in place for a specific number of days. *See id.* at 4. The stay would afford NMFS the opportunity to issue a new biological opinion and, if necessary, promulgate new regulations amending the existing Pelagics FMP. *See id.*

### 3. Outlining the Differences.

■ There are several subtle, yet real, differences between the relief requested by Plaintiff and Defendants. Under the precedent cited by Defendants, the Court may remand an unlawful agency action without vacatur only where "there is at least a *serious possibility* that the Secretary on remand could explain [the ultimate determination] in a manner consistent with the statute." Defs.' Mot. to Reconsider at 6 (quoting *Milk Train, Inc. v. Veneman,* 310 F.3d 747, 756 (D.C.Cir. 2002), in turn quoting *Allied–Signal v. United States Nuclear Regulatory Comm'n,* 988 F.2d 146, 150–51 (D.C.Cir. 1993)) (emphasis added) (internal quotations omitted, alterations in the original). In reading the holdings of these cases, the District of Columbia Circuit's implicit rationale should not go unnoticed: A court's decision to remand without vacatur is determined, in no small part, by considering whether the deficiencies that pervade the agency's actions are likely to be rectified. *See, e.g., Allied–Signal,* 988 F.2d at 150–51; 1 Richard J. Pierce, Administrative

Law Treatise § 7.13, at 522 (4th ed.2002); Ronald M. Levin, *"Vacation" at Sea: Judicial Remands and the APA,* 21 Admin. & Reg. L. News. 4 (Spring 1996). For this and many other reasons, remand without vacatur has been viewed with some skepticism. *See, e.g., Checkosky v. SEC,* 23 F.3d 452, 490–93 (D.C.Cir.1994) (Randolph, J., dissenting) (arguing, among other things, that remand without vacatur is inconsistent with the APA); *Milk Train,* 310 F.3d at 757–58 (Sentelle, J., dissenting); *see also* 1 Richard J. Pierce, Administrative Law Treatise § 7.13, at 522 (4th ed.2002); Ronald M. Levin, *"Vacation" at Sea: Judicial Remands and the APA,* 21 Admin. & Reg. L. News. 4 (Spring 1996).

■ On the other hand, staying the mandate—the approach advocated by Plaintiff—does not suffer from the same failings as remand without vacatur. The power to stay a mandate has been ascribed to the courts' equitable powers. *See, e.g., Indep. U.S. Tanker Owners Comm. v. Dole,* 809 F.2d 847, 854–55 (D.C.Cir.1987); *see also* Ronald M. Levin, *"Vacation" at Sea: Judicial Remands and the APA,* 21 Admin. & Reg. L. News. 4 (Spring 1996). Moreover, the remedy, while certainly not uncontroversial, has been accepted by some opponents of remand without vacatur, Judge Randolph among them. *See Checkosky,* 23 F.3d at 493 n. 37 (Randolph, J., dissenting) ("If the agency believes that vacating its order or rule would cause difficulties, it has the option of applying for a stay of the mandate, at which point it may make its arguments regarding irreparable harm and other considerations. This is the usual and appropriate method of handling such matters, which are rarely the subject of briefing or argument at the petition-for-review stage."). As a practical matter, staying the mandate presupposes the opposite presumption of remand with-

out vacatur; it assumes that the underlying agency action is substantively deficient, but due to equitable considerations, relieves the parties from the onerous results of the court's holding until the agency can redo its analysis. With the legal and practical distinctions outlined above in mind, the Court will consider the arguments raised by the parties in their motions.

## II.  ANALYSIS

### A.  *Motion to Reconsider.*

■ Plaintiff and Defendants filed their motions for reconsideration under Rule 59(e). Rule 59(e) mandates that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of judgment." Fed.R.Civ.P. 59(e). In this case, Plaintiff and Defendants both timely filed their motions to reconsider within the ten-day time frame permitted under Rule 59(e). *See* Aug. 31, 2003, Op.; Pl.'s Mot. to Reconsider (Sept. 10, 2003); Defs.' Mot. to Reconsider (Sept. 12, 2003); *see also* Fed.R.Civ.P. 6(a).

■ Rule 59(e) vests the Court with discretion to correct errors or prevent manifest injustice. *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996) ("A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal quotations omitted). Denials of a Rule 59(e) motion are reviewed for abuse of discretion. *Id.*

All the parties are in agreement: The Court's August 31, 2003, Memorandum Opinion and Order has created a "dilemma," Defs.' Mot. to Reconsider at 4—even "extreme uncertainty and confusion," Pl.'s Mot. to Reconsider at 3. *See also* Def.-Intervenors' Joinder in Defs.' Mot. for Reconsideration at 1–2 (stating that the

vacatur of the biological opinion and regulations "leaves both NMFS and the longliners subject to liability for violating Section 9(a)'s prohibition of unauthorized takes of endangered animals"). As a result, the Court concludes that a reconsideration of its judgment is warranted under Federal Rule of Civil Procedure 59(e).

## B. *Defendants' Motion to Reconsider Vacatur.*

A court may remand without vacatur where " 'there is at least a *serious possibility* that the [agency] will be able to substantiate its decision' given an opportunity to do so, and when vacating would be 'disruptive.' " *Radio–Television News Directors Ass'n v. FCC,* 184 F.3d 872, 888 (D.C.Cir.1999) (citing *Allied–Signal,* 988 F.2d at 151) (emphasis added) (alteration in original). In this case, the latter standard has clearly been met: The Court has no doubt that the vacatur of the biological opinion and the regulations has caused serious disruptions for the Plaintiff, Defendants, and the Defendant–Intervenors in this case. The Court is not persuaded, however, that there is a "serious possibility" that the agency can substantiate its decision. To be sure, the first biological opinion invalidated by this Court was struck down for procedural reasons, and, in many respects, the biological opinion that followed merely extended these procedural deficiencies. At the same time, the Court cannot overlook the fact that the

agency has, whether inadvertently or intentionally, avoided judicial review on the merits of its decisions for over two and one half years. Under these circumstances, the Court cannot conclude that there is a "serious possibility" that the agency can substantiate its decision. Consequently, it is inappropriate to remand the biological opinion and regulations without vacatur.

## C. *Plaintiff's Motion to Reconsider the Issuance of a Stay of the Vacatur*

At the same time, the Court is vested with equitable authority to stay the mandate. *See Indep. U.S. Tanker Owners Comm.,* 809 F.2d at 854–55; *Checkosky,* 23 F.3d at 493 n. 37 (Randolph, J., dissenting); *see also* Ronald M. Levin, *"Vacation" at Sea: Judicial Remands and the APA,* 21 Admin. & Reg. L. News. 4 (Spring 1996). As the Court indicated above, the vacatur has been disruptive. When compared to remand without vacatur, however, issuing a stay of the mandate has the added advantage of not presupposing the validity of NMFS's actions. Accordingly, the Court will stay the mandate of its August 31, 2003, Order.

## III. CONCLUSION

The Court will use its equitable powers to stay the mandate of its prior decision until April 1, 2004.[4] During this period of time, the regulations amending the Pelagics FMP and the biological opinion issued

4. The Court has decided to provide NMFS until April 1, 2004, to take action and issue a biological opinion in the hope that the agency will render a more permanent solution to the problem at hand than interim or emergency measures. The Court reached this decision in part by relying on Defendants' representation that the purported action under review will not be ripe until after the Western Pacific Council meets on October 20, 2003. Defs.' Reply at 12. Accordingly, the Court has provided NMFS with approximately five months to take appropriate action under the ESA and

the Magnuson–Stevens Act: three months to consult with Plaintiff and third parties on the proposed action and take the necessary steps to prepare a biological opinion; one month to write up the biological opinion; and an additional month, if necessary, to promulgate regulations amending the Pelagics FMP. This time table is by no means a mandate on the agency; it merely reflects the Court's own calculation, broken down into segments, as to what would be a reasonable time in which NMFS could comport with its requirements

on November 15, 2002, will effectively govern the Fishery's activities. At the conclusion of this period, however, the stay will be lifted automatically and the regulations and the biological opinion will be vacated pursuant to the Court's August 31, 2003, Opinion and Order. Consequently, NMFS has approximately five months after the Western Pacific Council takes action to study the effects of the Fishery—consistent with the standards set forth in the August 31, 2003, Opinion—and issue a new biological opinion. In addition, if the new biological opinion so requires, NMFS will have the remainder of this five-month period to issue notice under the APA and promulgate regulations amending the Pelagics FMP. Should NMFS fail to take appropriate action during the five-month period, the automatic lifting of the stay could render the agency delinquent in its duties under the ESA and have serious consequences for Fishery and the listed turtles—a reality that the parties are all too well-aware. Suffice it to say, the parties should have every incentive to cooperate with one another as they reach a sufficient and legally valid decision under the ESA.

For the reasons stated above, Plaintiff HLA's Motion to Reconsider is granted in part and denied in part; Defendants' Motion to Reconsider is denied. An Order accompanies this Memorandum Opinion.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 6 of October, 2003, hereby

**ORDERED** that Defendant–Intervenors' Motion for Joinder [# 138] is GRANTED; it is further

**ORDERED** that Defendants' Motion for a Two–Day Extension of Time to File Their Reply [# 141] is GRANTED; it is further

**ORDERED** that Plaintiff's Motion for Leave to File Surreply [# 145] is GRANTED; it is further

**ORDERED** that Plaintiff's Motion for Reconsideration [# 133] is GRANTED IN PART AND DENIED IN PART; it is further

**ORDERED** that the Court will stay the mandate of its August 31, 2003, Opinion and Order [# 132] until April 1, 2004, at the end of which time the stay will be automatically lifted; and it is further

**ORDERED** that Defendants' Motion for Reconsideration [# 135] is DENIED.

**THIS CONSTITUTES A FINAL APPEALABLE ORDER.**

**SO ORDERED.**

under the ESA and the Magnuson–Stevens Act. The 45–day (or, in the alternative, 60–day) period proposed by Plaintiff would give Defendants just over two weeks (or, in the alternative, one month) to issue a biological opinion and then, if required, one month to promulgate rules amending the Pelagics FMP consistent with the APA's 30–day notice requirement. In the Court's opinion, such a short time table would lead to temporary, or even hurried, solutions to the problem at hand. The Court is optimistic that the parties will use the five-month period to find a well-reasoned and legally valid solution. At the same time, the five-month period should provide a realistic deadline for accomplishing the difficult task that is before the agency.