# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed February 28, 2025

No. 23-1067

MARIN AUDUBON SOCIETY, ET AL.,
PETITIONERS

v.

FEDERAL AVIATION ADMINISTRATION, U.S. DEPARTMENT OF
TRANSPORTATION AND NATIONAL PARK SERVICE, U.S.
DEPARTMENT OF THE INTERIOR,
RESPONDENTS

———

On Joint Unopposed Motion to Stay Issuance of the Mandate

———

*Todd Kim*, Assistant Attorney General, U.S. Department of
Justice, and *Justin D. Heminger* and *Jacob D. Ecker*, Attorneys,
were on the joint unopposed motion to stay issuance of the
mandate for respondents.

*Kirti Datla*, *Tosh Sagar*, *Linnet Davis-Stermitz*, *Paula N.
Dinerstein*, and *Peter T. Jenkins* were on the joint unopposed
motion to stay issuance of the mandate for petitioners.

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit
Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH, with whom *Circuit Judge* HENDERSON joins.

Opinion concurring in the disposition filed by *Chief Judge* SRINIVASAN.

RANDOLPH, *Senior Circuit Judge*, with whom Circuit Judge HENDERSON joins:

In *Marin Audubon Society v. FAA*, 121 F.4th 902 (D.C. Cir. 2024), we determined that an air tour management plan for four Bay Area national parks, adopted by the Federal Aviation Administration and the National Park Service, should be vacated pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2). 121 F.4th at 918–19; *see also id.* at 919–20 (Randolph, J., concurring). We agreed with a group of organizations and one area resident (Petitioners) that the Agencies' NEPA analysis was arbitrary and capricious. *See id.* at 917. In so holding we stated that, "[i]f the Agencies and Petitioners desire to keep the current Plan in place while the Agencies restart their NEPA review, the parties may move for a stay of our mandate." *Id.* at 918.

Before us now is a stay motion, filed jointly by Petitioners and the Agencies pursuant to Federal Rule of Appellate Procedure 41(b). *See also* D.C. Cir. R. 41; 28 U.S.C. § 1651. At this stage, the merits of our decision are not at issue. Our court recently denied joint petitions for rehearing and rehearing *en banc*. *See* Orders, *Marin Audubon*, 121 F.4th 902, ECF Nos. 2097983, 2097987 (Jan. 31, 2025). Our panel decision therefore stands.[1]

---

[1] *See, e.g.*, *Cox v. Dep't. of Just.*, 111 F.4th 198, 209 (2d Cir. 2024); *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017); *United States v. Little,* 119 F.4th 750, 770 (10th Cir. 2024); *Hunter v. United States*, No. 17-10575-EE, 2017 WL 11621371, at *2 (11th Cir. Dec. 27, 2017).

The parties request a stay only of the portion of the opinion holding that the air tour management program must be "set aside." *Marin Audubon*, 121 F.4th at 918–19. They point out that without a stay of the mandate, the prior interim system would be revived on remand while the Agencies comply with our decision. Under that system, "nearly twice as many flights were authorized for two park units and even more for the other two park units," frustrating Petitioners' goals to reduce overflights. *See* Joint Mot. to Stay Issuance of the Mandate at 1 (Joint Mot.). Vacating the plan could "thus harm the very places (the park units) and people (petitioners)" that Congress "meant to protect." *Id.*

Our court has regularly stayed vacatur judgments in cases on review of agency action. We have done so to ameliorate that remedy's potentially harsh consequences, but have not explicitly set out a  governing standard. *See, e.g.*, *Indep. U.S. Tanker Owners Comm'n v. Dole*, 809 F.2d 847, 855 (D.C. Cir. 1987) (vacating but, with limited analysis, "withhold[ing] issuance of our mandate" for six months). Nevertheless, we are guided by our answers to analogous questions in similar circumstances.

First, we regularly delay issuance of our mandates during the pendency of a petition for certiorari. Such requests are reviewed against the court's long-standing principles governing stays pending appeal. *See, e.g.*, *Va. Petrol. Jobbers v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C. Cir. 1977). In those circumstances, we consider "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 673–74 (D.C. Cir. 1985).

There is good reason to doubt whether that test should apply here in full. Absent a pending motion for rehearing, a pending motion for *en banc* review, or a pending petition for certiorari, the first factor regarding success on the merits has no relevance. As to the second factor, irreparable harm, we have consistently granted stays when vacatur will prove to be disruptive to the losing party—but without a showing of irreparable harm. *See, e.g.*, *Tanker Owners*, 809 F.2d at 855; *Friends of the Earth, Inc. v. EPA*, 446 F.3d 140, 148 (D.C. Cir. 2006) (noting that "the parties may move to stay" for practical reasons); *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 872 (D.C. Cir. 2001) (contemplating a stay to permit development of an interim rule); *U.S. Tel. Ass'n v. FCC*, 188 F.3d 521, 531 (D.C. Cir. 1999) (explaining that the agency "may of course request a stay," which was subsequently granted, *see* Order Granting Mot. to Stay Mandate, 188 F.3d 521, No. 97-1469 (June 21, 1999)); *Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 924 (D.C. Cir. 1998) (at the court's suggestion the agency filed a Rule 41 motion to delay issuance of the mandate, a motion we granted, *see* Order Granting Mot. to Stay Mandate, 139 F.3d 914, No. 97-1044 (June 17, 1998)).

However, factors three and four—consideration of the equities and the public interest—are certainly pertinent. Several of our decisions have considered the practical effects on petitioners, the agencies, and third parties when deciding whether to stay a vacatur order. For example, in *Chamber of Commerce v. SEC*, 443 F.3d 890 (D.C. Cir. 2006), we recognized that the industry had already come into compliance with the agency rule, so "immediate vacation . . . risk[ed] substantial disruption" and could "sow confusion." *Id.* at 909. We accordingly withheld our mandate for ninety days. *See id.* Likewise, *Cboe Futures Exchange, LLC v. SEC*, 77 F.4th 971 (D.C. Cir. 2023), emphasized that vacating a rule regulating

financial markets raised "concerns with assuring adequate time for investors to unwind transactions." *Id.* at 982. And while those concerns "d[id] not counsel against ordering vacatur altogether," we thought it advisable to "build[] in a grace period" of three months before the vacatur order took effect. *Id.*

In these circumstances, our stay practice somewhat resembles the remand-without-vacatur cases where vacatur will leave the prevailing party worse-off. This occurs, as here, when a petitioner wins on the theory that an agency's proposed rule does not go far enough to regulate conduct. *See, e.g.*, *Env't Def. Fund, Inc. v. Adm'r*, 898 F.2d 183, 190 (D.C. Cir. 1990) ("[V]acat[ur] . . . would at least temporarily defeat petitioner's purpose, the enhanced protection of the environmental values covered by the PSD provisions."); *NACS v. Bd. of Governors*, 746 F.3d 474, 493 (D.C. Cir. 2014) (declining to vacate a rule capping debit card transaction fees, which petitioners challenged as too high, because vacatur would cause fees to rise even higher). In these types of cases, our court applies the test set out in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993), which examines "the seriousness of the order's deficiencies" as well as "the disruptive consequences of an interim change that may itself be changed." *Id.* at 150–51 (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990)). As with our stay cases, these decisions recognize that vacating agency action can occasionally raise practical difficulties.

Like the stay test, however, the *Allied-Signal* approach cannot be applied wholesale to the present motion. Under *Allied-Signal*, the principal question is whether we should vacate the flawed agency action. But here, we have already determined that vacatur is the appropriate remedy under the APA. "Staying the mandate presupposes the opposite presumption of remand

without vacatur" because "it assumes that the underlying agency action is substantively deficient." *Haw. Longline Ass'n v. Nat'l Marine Fisheries Serv.,* 288 F. Supp. 2d 7, 11 (D.D.C. 2003). Instead, granting a stay motion is grounded in "equitable considerations" and is designed to "relieve[] the parties from the onerous results of the court's holding until the agency can redo its analysis." *Id.*

The parties have outlined disruptive and potentially injurious effects of vacatur during remand proceedings. Having reviewed the briefs and affidavits submitted, we are persuaded that immediate vacatur could entail disruptive consequences that tilt both the equities and public interest factors in favor of a stay.

The Agencies have lodged affidavits stating that they will need 12 months to bring themselves into compliance with our decision.[2] We therefore withhold issuance of the mandate until

[2] The length of the stay may also be warranted in light of recent executive action. As the *Marin Audubon* opinion discussed, the Council on Environmental Quality sought to derive regulatory authority from Executive Order 11991, 42 Fed. Reg. 26,967 (May 25, 1977), issued by President Carter. *See* 121 F.4th at 910–11. The parties have informed the court that President Trump has since issued Executive Order 14154, 90 Fed. Reg. 8353 (Jan. 29, 2025), which revokes Executive Order 11991 and requires the Council's Chairman to propose rescinding the Council's regulations, some of which were at issue in *Marin Audubon*. *See id.* at 8355 ("Executive Order 11991 of May 24, 1977 . . . is hereby revoked."); *id.* ("[W]ithin 30 days of the date of this order, the Chairman of the Council on Environmental Quality (CEQ) shall . . . propose rescinding CEQ's NEPA regulations found at 40 CFR 1500 et seq.").

CEQ has issued an interim final rule, effective April 11, 2025, removing the CEQ regulations implementing NEPA from the Code of Federal Regulations. *See* Removal of National Environmental Policy Act Implementing Regulations, 90 Fed. Reg. 10610 (Feb. 25, 2025).

12 months from the date of this Order, at which time the Agencies and Petitioners shall advise the court of the status of the proceedings on remand.

*So ordered.*

SRINIVASAN, *Chief Judge*, concurring in the disposition:

I would have granted remand without vacatur as set forth in my previous opinion concurring in part and dissenting in part, *see Marin Audubon Soc'y v. FAA*, 121 F.4th 902, 920 (D.C. Cir. 2024) (Srinivasan, C.J., dissenting in part), and I now concur in the grant of the joint motion to stay the mandate for substantially the same reasons—i.e., that vacatur without any stay of the mandate would have the effect of putting the prevailing parties in a worse position vis-à-vis the protections at issue than if they had not brought their challenge, *see id.* at 922–23 (Srinivasan, C.J., dissenting in part).